1  PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2  Name ___CORDOBA_____ROGELIO_____
          (Last)          (First)          (Initial)

3
4  Prisoner Number _____D-22031_____

   Institutional Address P.O. BOX 689, ZW-240L, SOLEDAD, CA 93960-0689
5

6  ═══════════════════════════════════════════════════

7              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA

8  ROGELIO CORDOBA,                    )
   _____  )
9  (Enter the full name of plaintiff in this action.)  )
                                       )
                                       )  Case No. _____
10       vs.                           )  (To be provided by the clerk of court)
                                       )
   BEN CURRY, WARDEN, ET. AL.,         )
11 _____   )  PETITION FOR A WRIT
                                       )  OF HABEAS CORPUS
12 _____   )
                                       )
13 _____   )
                                       )
14 (Enter the full name of respondent(s) or jailor in this action)  )
                                       )
15

16          Read Comments Carefully Before Filling In

17 When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1.  What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                County Superior Court, Oakland):

14          SUPERIOR COURT                  LOS ANGELES

15          Court                           Location

16          (b)    Case number, if known _____ #2 Crim. B019212

17          (c)    Date and terms of sentence _____ January 7, 1986

18          (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19               parole or probation, etc.)      Yes __X__    No _____

20               Where?

21               Name of Institution: CORRECTIONAL TRAINING FACILITY-SOLEDAD

22               Address: P.O. BOX 686, SOLEDAD, CA 93960

23      2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26      SECOND DEGREE MURDER WITH USE OF FIREARM

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS      - 2 -

3. Did you have any of the following?

    Arraignment:                  Yes _X_      No _____

    Preliminary Hearing:         Yes _X_      No _____

    Motion to Suppress:         Yes _____     No _X_

4. How did you plead?

    Guilty _____    Not Guilty _X_    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _X_    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?         Yes _X_      No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment           Yes _X_      No _____

    (b)    Preliminary hearing    Yes _X_      No _____

    (c)    Time of plea          Yes _X_      No _____

    (d)    Trial                Yes _X_      No _____

    (e)    Sentencing           Yes _X_      No _____

    (f)    Appeal              Yes _X_      No _____

    (g)    Other post-conviction proceeding    Yes _____     No _X_

8. Did you appeal your conviction?        Yes _____     No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal          Yes _____     No _____

        Year: _____    Result:_____

        Supreme Court of California    Yes _____     No _____

        Year: _____    Result:_____

        Any other court          Yes _____     No _____

        Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

1    petition?                                        Yes _____    No_____

2    (c)    Was there an opinion?                     Yes _____    No_____

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                      Yes _____    No_____

5           If you did, give the name of the court and the result:

6    _____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?    Yes _____    No_X_

10         [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition.  You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15   U.S.C. §§ 2244(b).]

16   (a)    If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding.  Attach extra paper if you need more space.

18   I.    Name of Court: CALIFORNIA SUPREME COURT _____

19         Type of Proceeding: ___ HABEAS CORPUS _____

20         Grounds raised (Be brief but specific):

21         a.___ SAME AS HERE _____

22         b._____

23         c._____

24         d._____

25         Result: _____ DENIED _____Date of Result:_ 8/8/2007

26   II.   Name of Court: _____

27         Type of Proceeding: _____

28         Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1        a._____

2        b._____

3        c._____

4        d._____

5        Result: _____Date of Result:_____

6    III.    Name of Court: _____

7        Type of Proceeding: _____

8        Grounds raised (Be brief but specific):

9        a._____

10       b._____

11       c._____

12       d._____

13       Result: _____Date of Result:_____

14   IV.    Name of Court: _____

15       Type of Proceeding: _____

16       Grounds raised (Be brief but specific):

17       a._____

18       b._____

19       c._____

20       d._____

21       Result: _____Date of Result:_____

22   (b)     Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                      Yes _____    No_____

24     Name and location of court: _____

25 B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS      - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One:_____SEE ATTACHED_____

6      _____

7      Supporting Facts:_____SEE ATTACHED_____

8      _____

9      _____

10     _____

11     Claim Two:_____

12     _____

13     Supporting Facts:_____

14     _____

15     _____

16     _____

17     Claim Three:_____

18     _____

19     Supporting Facts:_____

20     _____

21     _____

22     _____

23     If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 6 -

# SUMMARY OF FACTS

PETITIONER WAS A 20 YEAR OLD IMPRESSIONABLE
YOUNG MAN WHO FOUND HIMSELF IN BAD COMPANY AND
SUCCUMBED TO PEER PRESSURE BY FIRING A GUN IN
THE DARK, KILLING A 19 YEAR OLD ACQUAINTANCE.

PETITIONER IS NOW 43 YEARS OLD. HE REGRETS AND
ACCEPTS FULL RESPONSIBILITY FOR HIS ACTIONS.

PETITIONER IS A DEPORTABLE ALIEN WHO IS
REQUESTING IMMEDIATE DEPORTATION UPON HIS
RELEASE FROM PRISON.

(REFER TO EXHIBIT B – PSYCH EVALUATION)

# TABLE OF CONTENTS

**TITLE**                                                      **PAGE**

Cover                                                          1

Table of Contents                                             2

Points and Authorities                                        3 – 4

Judicial MC-275                                               5 – 19
     Ground 1                         7 – 14
     Ground 2                         14 – 15

Conclusion                                                    16

Prayer for Relief                                             17

Proof of Service by Mail                                      18

Exhibit 'A'                                                   19 – 98
  (Hearing Transcript 2006)

Exhibit 'B'                                                   98 – 102
  (Psychological Evaluation)

Exhibit 'C'                                                   102 – 109
  Life Prisoner Evaluation Report (LPER)

# TABLE OF AUTHORITIES

**AUTHORITY**                                                                **PAGE**

## CONSTITUTIONAL AUTHORITIES

U.S. CONSTITUTION, AMENDMENT 7, 14                            5, 6, 9, 10, 11, 14, 15

CALIFORNIA CONSTITUTION, ARTICLE I, SECTIONS 7, 15           5, 6, 9, 10, 11, 14, 15

## FEDERAL CASE LAW

Biggs v. Terhune, (2003 9th Cir.)                            5, 6, 8, 9,
334 F.3d 910
Irons v. Warden of Solano                                    12
(2005) 358 F.Supp. 936
Martin v. Marshall                                           11
(2006) 431 F.Supp.2d 1038
McQuillion v. Ducan, (9th Cir.)                              5, 6
306 F.3d 895
Rio v. BPT Commissioners                                     12
(2006) ND No. C 05-1483 MPH
Rosenkrantz v. Marshall                                      11
(2006) 444 F.Supp.2d 1063

## STATE CASE LAW

In re Capistran, (2003)                                      13, 14
107 Cal.App.4th 1299
In re Caswell, (10/10/01)                                    13, 14
92 Cal.App.4th 1017
In re Elkins                                                 10
2006 DJDAR 14489
In re Jackson, (1985)                                        13, 14
39 Cal.App.3rd 464
In re Lee                                                    10
(2006) 143 Cal.App.4th 1400
In re Minnis,                                                6
7 Cal.3d at p. 647
In re Norman Morrall, (2002)                                 5, 6, 8, 13, 14
102 Cal.App.4th 280
In re Edward Ramirez, (2001);                                5, 6, 9, 10 13, 14
94 Cal.App.4th 549
In re Rodriguez,                                             13, 14
(1975) 14 C.3d 639
In re Rosenkrantz (2002)                                     5, 6
29 Cal.App.4th 659

1

**STATE CASE LAW**

2

3    <u>In re Rosenkrantz</u>,                                                    13, 14
     95 Cal.App.4[th] 358

4    <u>In re George Scott</u>                                                   5, 8
     119 Cal.App.4[th]

5    <u>In re Mark Smith</u>, (2003)                                            5
     Cal.App.4[th] 343

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES PAGE 2

| PENAL CODE | PAGE |
|---|---|
| § 3000(b)(1) | 5 |
| § 3041(a) | 10, 11 |
| § 3041(b) | 5, 6 |
| § 3041.5 | 5, 6, 9 |
| § 3041.5(b)(2) | 13 |
| § 5076.2 | 13 |

## CALIFORNIA CODE of REGULATIONS

| CCR SECTION | PAGE |
|---|---|
| CCR § 2000(b) (48) [Good Cause] | 13, 14 |
| CCR § 2000(b) (61) [Material Evidence] | 13, 14 |
| CCR § 2000(b) (89) [Relevant Evidence] | 13, 14 |
| CCR § 2400 et seq. | 13, 14 |
| § 2282(a) | 8 |
| § 2402(a) | 6 |
| § 2402(c)(1)(D) | 8 |
| § 2403(c) | 6, 9 |
| § 3375.2(7)(A) | 8 |

**THE BOARD OF PRISON TERMS ILLEGALLY USED PENAL CODE
SECTION 3041(b) [THE EXCEPTION] TO FIND PETITIONER
UNSUITABLE FOR PAROLE, AS THERE IS NOT A MODICUM OF
EVIDENCE THAT PETITIONER IS A <u>CURRENT</u> THREAT TO SOCIETY
OR OTHERWISE UNSUITABLE FOR PAROLE. THE DECISION WAS
ARBITRARY AND CAPRICIOUS VIOLATING PETITIONER'S STATE
AND FEDERAL DUE PROCESS RIGHTS.**

On SEPTEMBER 12, 2006, Petitioner ROGELIO CORDOBA, D-22031 (hereinafter

"Petitioner"), was provided a Life Term Parole Consideration Hearing before the Board of

Parole Hearings (hereinafter "Board", "BPH", or "Panel"); Please refer to Exhibit 'A' which is

the Hearing Transcript (hereinafter "HT" or "Transcript"). Said Hearing was Petitioner's

SEVENTH parole suitability hearing. Petitioner's Minimum Eligible Parole Date (hereinafter

"MEPD"), was NOVEMBER 12, 1995.[1] The purpose of this Board hearing was for the setting

of Petitioner's term uniformly [2] to his offense and for a finding of suitability for parole (See

Penal Code § 3041.5; <u>In re Edward Ramirez</u>, 94 Cal.App.4th 541 (2001); <u>McQuillion v. Ducan</u>,

(9th Cir.) 306 F.3d 895; <u>In re Norman Morrall</u>, (2002) 102 Cal.App.4th 280; <u>In re Rosenkrantz</u>,

(2002) 29 Cal.App.4th 660; <u>In re Mark Smith</u>, (2003) Cal.App.4th 343; and the recent <u>Biggs v.</u>

<u>Terhune</u>, (2003 9th Cir.) 334 F.3d 910.

The result of this Board hearing was an erroneous and unlawful finding of unsuitability and

a release date was not set. Instead, Petitioner was given a ONE (1) year denial and did not

appeal this decision through the administrative remedy because the Board has eliminated the

BPT Appeals Unit and no longer allows for the filing of administrative appeals on BPT denials

---

1 – The Court of Appeal in <u>In re George Scott</u>, (2004) 119 Cal.App.4th 871, reaffirmed the rationale of the
<u>Ramirez</u> and <u>Smith</u> Courts when it declared "...parole is the <u>rule</u>, rather than the exception, and conviction for
second degree murder does not automatically render one unsuitable. (<u>In re Smith</u>, (2003) 114 Cal.App.4th 343,
366). In re Ramirez, supra, 94 Cal.App.4th 549 ...[a]ll violent crimes demonstrate the perpetrator's potential for
posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences.
Penal Code § 3000 subd. (b)(1).) And the Legislature has clearly expressed its intent that when murders – who are
the great majority of inmates serving indeterminate sentences – <u>approach their minimum eligible parole date, the
Board shall normally set a parole release date</u>..." (id. at p. 570).

2. – The Court of Appeal on June 24, 2004, in <u>In re George Scott</u>, supra, 119 Cal.App.4th at 887 fn. 7, also
reaffirmed the Legislative Intent of Uniform terms by stating: "The first two sentences of the DSL declare 'that
the purpose of imprisonment for a crime is punishment' and that [t]his purpose is best served by terms
proportionate to the seriousness of the offense with provisions for uniformity in the sentences of offenders
committing the same offense under similar circumstances. (Penal Code § 1170, subd. (a)(1).) Nothing in the DSL
or its legislative history suggests that legislative concern with uniformity was limited to those serving determinate
terms. Penal Code § 3041 shows that this interest <u>does</u> extend to individuals such as [this Petitioner] who are
serving indeterminate life terms. (Id., citing <u>Ramirez</u>, supra 94 Cal.App.4th at 559).

of parole for indeterminately sentenced prisoners such as Petitioner. Petitioner submits that the Board's regulation, that is the California Code of Regulations (hereinafter "CCR"), § 2402(a) **DEMANDS that the Board set a release date unless Petitioner CURRENTLY presents an unreasonable risk of danger to the public.** Petitioner submits that the representing District Attorney did not provide any new and/or additional evidence whatsoever that Petitioner is an unreasonable risk of danger to the public or otherwise unsuitable for parole.

Additionally, Petitioner submits that the Board speaks in meaningless generalities and fails to address the exact nature of Petitioner's CURRENT character. By not doing so, the Board violated the intent and spirit of Penal Code (hereinafter "PC"), § 3041.5 [3] and In re Ramirez, supra, which dictates that the Board shall normally set a parole release date. (citing Biggs v. Terhune, supra).

The Court in Biggs, supra, held that the Board's continued use of the crime (or any other unchanging circumstances) as a basis for denial of parole when Petitioner's Institutional Behavior remains exemplary may be a violation of both State and Federal Due Process.

Since his incarceration, Petitioner has had two Rules Violations Reports, a serious one on 11/19/87 for threatening staff and an administrative one on 6/23/88 for theft of state food. He has had no occurrence of serious or violent disciplinary action since 1988, thus exemplifying a model prisoner. There has been thereafter a continuous EIGHTEEN (18) year history free of any serious violent disciplinary action or occurrence. Petitioner submits that the Board's failure to uniformly measure his offense and set his term proportionately to others similarly situated and to find him suitable for parole violates both State and Federal due Process. Also, the current policy of the Board, which will be discussed more fully infra, is the setting of a parole date which is all too often the exception rather than the norm, and thus violates Petitioner's Liberty Interest that is present in a parole date; In re Rosenkrantz, supra; McQuillion v. Ducan, supra; Biggs v. Terhune, supra. At the Petitioner's board hearing the BPT relied solely on

---

3 – There is no evidence that the crime is "particularly egregious" to justify the use of the exception clause of PC § 3041(b); In re Norman Morrall, supra, the court concluded "[W]e agree that an inmate cannot be denied parole simply on the type of offense he committed." (See also In re Minnis, 7 Cal.3d at p. 647). To the contrary, it falls squarely in the Board's own proportionality matrix CCR § 2403(c) at axis B-II. Without post-conviction credits Petitioner has served twenty two (22) years. Adding post conviction credits he has served twenty seven (27) plus years, essentially reaching his matrix as required. There is no evidence that Petitioner is a current risk or threat to society and the Board's conclusions are not supported by the record. (See Biggs, supra).

Petitioner's commitment offense and prior history to justify its unlawful finding of

unsuitability. Beginning at page 48 of Exhibit 'A', the HT, the Board stated:

"It is based on the commitment offense." (line 14-15)

"The offense was carried out in an especially callous manner. The offense was carried

out in a dispassionate and calculated manner. The offense was carried out in a manner

which demonstrates an exceptionally callous disregard for human suffering. The

motive for the crime was very trivial in relation to the." (HT-46 lines 15-21)

In addition, and with regard to the Petitioner's suitability, the board erred in disregarding

Petitioner's Mental Health Evaluation which is supportive of release (please refer to HT

DECISION pg. 24 lines 7-27 line). Petitioner's Psychiatric Reports have been much

instructive. Specifically, Dr. M. Macomber, Ph.D., CTF-Soledad, Staff Psychologist, stated:

"Mr. CORDOBA has been doing very well in the institutional environment. He has

been disciplinary free for over 18 years. In the institution he has never been involved

in any gang activities, although we do have frequent racial, gang related riots at this

prison. He also has no history of drug or of alcohol use. Axis One, no mental

disorder. Axis Two, no personality disorder, a GAF score of 85." (See Exhibit 'B' pg.

2, Psychological Evaluation, Current Mental Status)

And under "Assessment of Dangerousness" Dr. Macomber stated:

"In considering potential for dangerous behavior in the institution, this man has been

seen since 2002 by two additional psychologists. This is his third examination by a

licensed psychologist to assess dangerousness. They all agree that he does not pose a

risk to the institution or to society at this point in his life. Compared to other inmates,

violence potential is definitely below average." (Id., p. 3)

B. In considering potential for dangerous behavior when released to the community, I

agree with the prior three psychologists that stated that he poses no more risk to

society than the average citizen in the community. This is supported by the

administration of the Level of Service Inventory-Revised, which is an actuarial

measure that assesses criminal history, substance abuse history, vocational

achievement, social relationships and other factors to determine **current** risk level on

parole. His score places him at the 1.4 cumulative frequency for prison inmates. This

means that if 100 men were released on parole, he would do better on parole than 98

of them. This is a very low risk level. He does not pose any more risk to society than

the average citizen. In fact, due to his life experiences, he probably poses less risk to

the community than the average citizen."

Additionally, the Board ignored that Petitioner has been deemed by the California

Department of corrections a **Model** prisoner with A-1-A status, and **Not** a threat to society, and

that Petitioner's crime is not "particularly egregious" (especially cruel and callous) by placing

Petitioner in a Level II prison setting. [4]

Also, in the Life Prisoner Evaluation Report (hereinafter "LPER") attached as Exhibit 'C',

Petitioner's Correctional Counselor, CC-I Baker, states:

"Cordoba overall pattern of behavior since his last subsequent hearing is considered

exceptional. Prior to release the prisoner could benefit from maintaining a

disciplinary free record, participating in self-help therapy when available and

participating in any available college correspondence courses." **(Exhibit 'C')**

Again, in In re Norman G. Morrall, supra, the Court concluded; "A refusal to consider the

particular circumstances relevant to an inmate's individual suitability for parole would be

contrary to law." Moreover, the Court in Biggs, supra, addressed the Board's continued illegal

use of the crime and/or prior history to justify a denial of parole:

**"... a continued reliance... on an unchanging factor, the circumstances of**

**the offense and conduct prior to imprisonment, runs contrary to the**

**rehabilitative goals espoused by the prison system and could result in a due**

**process violation". (Biggs, supra, 334 F.3d at 917).**

4. California Code of Regulations, Title 15, section 3375.2 subd. (7)(A) states: "An inmate serving any life term shall not be housed in a Level I or II facility if any of the following case factors are present: The Commitment Offense involved... unusual violence...." And on June 24, 2004, the Court of Appeal in In re George Scott, supra, 119 Cal.App.4[th] at 892 fn. 11, found that the Board's regulations provide that even if the crime is "exceptionally callous" an inmate may be found suitable for parole. The Court declared that "Under the Board regulations, base terms for life prisoners are not calculated until after an inmate is deemed suitable for release. (§ 2282, subd. (a).) The regulations therefore contemplate that an inmate may be deemed suitable for release even though his offense demonstrated "exceptionally callous disregard for human suffering." (§ 2402, subd, (c)(1)(D).)" (Id)

In <u>Biggs</u>, supra, the appeal was pursuant to his initial suitability hearing. The Petitioner has now had EIGHT Board hearings and submits that his most recent denial rests solely on the commitment offense, (as did his previous ones), and therefore violates both State and Federal Due Process. Most importantly, there is no evidence that the public safety requires a lengthier period of incarceration (please refer to PC § 3041 (b)), in relation to other instances of the same crime please refer to PC § 3041.5.

Petitioner submits that understanding and perspective of the crime is compelled by the Board's own proportionality matrix (please refer to CCR Division 2, § 2403(c). The matrix scale and rating of the more common and routine variations of murder appear to a codification of when a crime of this nature can be more egregious than average.

Petitioner submits that his crime falls squarely in the matrix [category B-II, 18-19-20 years]. With post conviction credits, Petitioner has exceeded the maximum by more than SEVEN (7) years and without post conviction credit application, Petitioner has served his matrix. The Board fails in any attempt to substantiate why Petitioner's crime is so heinous as to require that Petitioner be exempted time and time again from the general rule that a parole date shall normally be set; please see <u>In re Ramirez</u>, supra, wherein the court states:

> **"The Board must weigh the inmate's criminal conduct not against ordinary social norms, but against other instances of the same crime or crimes. (<u>Ramirez</u>, supra, Cal.App.4th at p. 570).**

Petitioner submits that the record is devoid of the Board making such a comparison. Similarly, Petitioner's Psychiatric Report evidence, like <u>Biggs</u>, supra, is supportive of release; contrary to the Board's erroneous and specious findings (please see Exhibit 'A' and 'B'). The court in <u>Biggs</u>, addressed the Board's illegal usage of needed therapy and other illegal reasons to justify a highly illegal denial. The Court concluded:

> **"The record in this case and the transcript of Biggs' hearing before the Board clearly show that <u>many of the conclusions and factors relied upon by the Board were devoid of evidentiary basis</u>." (<u>Biggs</u>, supra, 334 F.3d at p. 915)**

The Court in <u>Biggs</u>, supra, went on to warn the Board that while there was "some evidence" to use the crime as a basis for denial at his <u>initial</u> hearing, the board's continued use

of the crime as a basis for continual denials would be a violation of Biggs Federal due process rights. Petitioner submits that the Board's <u>sole</u> usage of the initial commitment offense and/or prior social history, on a continual basis to deny him a parole date has violated his 5th and 14th Amendment rights under the United States Constitution to not be deprived of his liberty.

> **"[T]o ensure that a state created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by the state statute to be considered. but also the concepts embodied in the <u>Constitution</u> requiring <u>due process of law</u>... "[Please see e.g. in <u>Greenholtz</u>, 442 U.S. at 7-8.]." (<u>Biggs</u>, supra, 334 F.3d at p. 916)**

> **"The Parole Board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of Parole can be initially justified as fulfilling the requirements set forth by state law. Over time however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, <u>denying him a parole date simply because of the nature of his offense and prior conduct would raise serious questions involving his liberty interest in parole</u>...(Id)**

Petitioner also submits that the Board has adopted an anti and/or no parole policy per se, or a policy of under-inclusion demonstrating a policy of systematic bias; granting only an approximate 232 parole dates out of over 11,000 parole hearings, thus violating the legislative intent of PC § 3041(a) that; "...a parole date <u>shall normally</u> be set in a manner that will provide <u>uniform</u> terms for offenders with crimes of similar gravity and magnitude...". And, violating Petitioner's State and Federal due process rights as well (please see <u>In re Ramirez</u>, supra, at page 565). Petitioner contends that the evidenced behavior by a quasi-judicial Board, of a policy demonstrating an approximate 98.5% denial rate, supports the premise that such a policy exists (i.e. anti and/or no parole policy of under-inclusion or systematic bias): this policy violates the strictures of substantive due process.

1    The existence of said policy in denying parole may explain why the Board only grants

2    parole in less than two (2) percent of the cases it hears; it also explains the bias demonstrated in

3    the present case.

4        In this case, Petitioner's own circumstances, the Board's pronouncement of numerous

5    unlawful conclusions, not supported by the record, violates the process due to Petitioner under

6    the State and Federal Constitutions. Based upon the herein-demonstrated bias, the Board's

7    decision cannot be shielded by the "some evidence" standard. The only appropriate remedy is

8    an independent review.

9        Petitioner respectfully requests that the Court take a look and compare this case with others

10   where the circumstances were more aggravated, yet reviewing courts found that due process

11   was violated and the "some evidence" standard not met.

12       The Court in In re Wen Lee (2006) 143 Cal.App.4th 1400, [a multiple victims case with one

13   person dead], found that Lee's crimes were not "especially heinous, atrocious or cruel."

14   Additionally, the Court held, "Besides not being especially atrocious, heinous or callous, Lee's

15   crimes have little, if any, predictive value for future criminality. Simply from the passing of

16   time, Lee's crimes **almost 20 years ago** have lost much of their usefulness in foreseeing the

17   likelihood of future offenses than if he had committed them five or ten years ago." Further,

18   "The test is not whether some evidence supports the reasons cited for denying parole, but

19   whether some evidence indicates a parolee's release unreasonably endangers public safety."

20   Some evidence of the existence of a particular factor does not necessarily equate to some

21   evidence the parolee's release unreasonably endangers public safety.

22       In In re Jeffrey Elkins, 2006 DJDAR 14489, Elkins beat his victim over the head with a

23   baseball bat, robbed him, put the body in his car trunk and drove to a remote area where he

24   dumped the body. He was convicted by a jury in 1980. **He served 26 years**. The Court wrote,

25   "The commitment offense, this court has observed, is an unsuitability factor that is immutable

26   and whose predictive value 'may be very questionable after a long period of time.' (Scott II,

27   supra, 133 Cal.App.4th at pp. 594-595, fn. Omitted.) We have also noted, as has our Supreme

28   Court, strong legal and scientific support that 'predictions of future dangerousness are

     exceedingly unreliable,' even where the passage of time is not a factor and the assessment is

made by an expert. Reliance on an immutable factor, without regard to or consideration of

subsequent circumstances, may be unfair, run contrary to the rehabilitative goals espoused by

the prison system, and result in a due process violation. A parole hearing does not ordinarily

provide a prisoner a very good opportunity to show his offense was not committed 'in an

especially heinous, atrocious or cruel manner,' even if such evidence exists and the prisoner is

willing to run the risk his effort to make such a showing will be seen as unwillingness to accept

responsibility and therefore evidence of unsuitability."

"Our case, while resting on state due process (Cal. Const., art. I, section 7, subd. (a)),

compares favorably to cases affording habeas corpus relief on federal due process grounds,

against parole denials for California inmates with exemplary post-offense records who had

been sentenced to terms of at least 15 years to life for second degree murder . In one, the same

inmate earlier involved in our Supreme Court's decision in *Rosenkrantz* had offended at age

18, shooting a younger brother's friend [while lying in wait] who had revealed the inmate's

homosexuality to the inmate's intolerant father. The inmate's 'perfect prison record' and gains

of nearly **two decades** included, like Elkins' act of jeopardizing his own safety to protect a

correctional officer, saving the life of a fellow inmate. The Court found due process violated

when the former Board of Prison Terms denied parole, as it had before, based solely on the

gravity of the commitment offense. (Rosenkrantz v. Marshall (C.D. Cal. 2006 444 F.Supp.2d

1063, 1065, 1070.)

"In a second such case, former Governor Davis had reversed a BPT suitability

determination, stressing principally the gravity of the commitment offense. (Martin v. Marshall

(2006) 431 F.Supp.2d 1038) After first finding no support for other grounds, the court turned

to the factors surrounding and preceding the offense, which included the 26-year-old petitioner

fleeing the scene of his fatally shooting a drug dealer acquaintance and bystander in a blaze of

gunfire at a restaurant, wounding yet another bystander, and without seeking medical

assistance for any of his victims. The court reasoned: 'Petitioner has surpassed his minimum

sentence, and has already been found suitable for parole by two decision-making bodies … He

has been in prison for  approximately 26 years and has taken advantage of numerous

rehabilitation and enrichment programs. He has exceeded his minimum sentence by

approximately six years ... The Governor's sole reliance on the circumstance of the offense and conduct prior to the offense, constitutes a due process violation.'"

"A third instructive case is Irons v. Warden of Solano (2005) 358 F.Supp.936 (Irons) (app. pending sub nom. Irons v. Carey (9th Cir. 2005) 408 F.3d 1165, No. 05-15275), where an inmate serving 17 years to life was found unsuitable for parole at his 5[th] hearing before the BPT. The facts of the offense, again, in many respects far worse than those before us. The petitioner killed a fellow boarder after an argument in which the victim denied stealing from the landlords, as the landlords had claimed. The petitioner loaded a handgun, went to the victim's room, fired 12 rounds into him, said he was going to let him bleed to death and, when the victim complained of the pain, took out a buck knife and stabbed him twice in the back. The petitioner later borrowed a car and drove the body to an isolated coastal location where he released it into the surf. The BPT had relied exclusively on the facts of the commitment offense and the petitioner's drug use at the time. The Court wrote: 'Important in assessing any due process violation is the fact that continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole ... The circumstances of the crimes will always be what they were, and petitioner's motive for committing them will always be trivial. Petitioner has no hope for ever obtaining parole except that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial.' ... **After 15 or so years** in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not posses those attributes, the predictive ability of the circumstances of the crime is near zero."

Finally, in Rio v. BPT Commissioners, ND No. C 05-1483 MPH (Dec. 2006), a case involving a petitioner convicted of second degree murder even though not the actual shooter, Judge Patel wrote: "The BPT considered the circumstances of the murder and concluded that it was an carried out in a cruel and callous manner, carried out in a manner which demonstrates exceptionally callous disregard for human suffering, and was done for a trivial motive." Rio and his crime partners Amaro and Willie went to Roberto Hernandez's apartment under the

pretense of purchasing jewelry. During the robbery, Willie shot Hernandez in the back of the head. The Judge went on to say, "There was not sufficient evidence to support the finding that the circumstances of the commitment offense tended to show unsuitability. The BPT looked at the killing without any attention paid to Rio's role in that killing. The BPT's approach fails to distinguish between the actual killer and those who may be held liable based on their role in the crime such as aiding and abetting or under a felony murder theory as it rates all of them the same on the dangerousness scale. Not only does that approach seem contrary to common sense, it also is contrary to the wording of the regulation. The regulation calls for the BPT to consider whether 'the prisoner committed the offense in an especially heinous, atrocious or cruel manner,' indicating that the focus is on the parole candidate's particular actions in the killing ... Here, Rio was present when his crime partner killed the victim. The evidence also was that Rio was there for a robbery and the shooting of the victim was rather unexpected to Rio. There was no evidence that Rio was the leader of the criminal episode, and no evidence that Rio directed the killing or otherwise urged the killer to kill. Under the circumstances, his crime partner's execution-style killing does not provide some evidence that Rio 'committed the offense in an especially heinous, atrocious or cruel manner.' The state may hold a person criminally liable when his crime partner kills during a robbery, but the BPT has a different chore. The BPT is charged with determining whether a prisoner is suitable for parole, not whether he may be held liable for the killing in the first place. The evidence in the record does not support a finding that Rio committed the offense in an especially heinous, atrocious or cruel manner."

//

//

//

## CONCLUSION

The Board's decision was arbitrary and capricious. The Petitioner did not receive a fair hearing, nor will he ever.

Petitioner submits and contends that the finding of unsuitability was arbitrary and capricious:

1). Due to the Board carrying out it's political function of adhering to a no or anti-parole policy;

2). Due to the Board's acting contrary to the intent and spirit of PC § 3041 (a);

3). Due to basing its decisions on unsupported allegations; and

4). Due to the Board's refusal to adhere to aforementioned decisions and the controlling authorities.

Petitioner prays this Court order him released and /or discharged, or at the very least, direct the Board to issue a decision within ten (10) days granting parole, setting his term "uniformly" as mandated by the legislature.

//

//

//

**PRAYER FOR RELIEF**

1. Issue an Order to Show Cause on an expedited basis.

2. Appoint Counsel.

3. Conduct an Evidentiary Hearing.

4. Order Petitioner's appearance before the Court.

5. Order Petitioner taken back before the Board for a finding of suitability within ten (10) days, or in the alternative, order Petitioner released forthwith;

6. Declaratory relief, and

7. Any other relief this Court deems fair, just and appropriate.

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    _____

5    _____

6    _____

7    Do you have an attorney for this petition?                         Yes_____     No__X__

8    If you do, give the name and address of your attorney:

9    I AM REQUESTING APPOINTMENT OF COUNSEL._____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on __8-23-07__                          _Rosélio Córdoba_

14                Date                                              Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS              - 7 -

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____ ROGELIO CORDOBA _____, declare:

I am over 18 years of age and a party to this action. I am a resident of _____

_____ CORRECTIONAL TRAINING FACILITY-SOLEDAD _____ Prison,

in the county of _____ MONTEREY _____,

State of California. My prison address is: _____

_____ P.O. BOX 689, ZW-240L, SOLEDAD, CA 93960-0689 _____.

On _____ 8/23/07 _____,

(DATE)

I served the attached: _____ PETITION FOR HABEAS CORPUS _____

_____

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

ATTORNEY GENERAL'S OFFICE
110 W. A STREET, #11000
SAN DIEGO, CA 92186

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _____ 8-23-07 _____          _____ Rogelio Cordoba _____

(DATE)                                                    (DECLARANT'S SIGNATURE)

S151104

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re ROGELIO CORDOBA on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

AUG - 8 2007

Frederick K. Ohlrich Clerk

DEPUTY

**GEORGE**

Chief Justice