# EXHIBIT A
# (2006 HEARING TRANSCRIPT)

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

**INMATE COPY**

In the matter of the Life   )
Term Parole Consideration   )   CDC No: D-22031
Hearing of:                 )
                            )
ROGELIO CORDOBA             )
_____)

CALIFORNIA TRAINING FACILITY

SOLEDAD, CALIFORNIA

SEPTEMBER 12, 2006

4:35 p.m.

PANEL PRESENT:

Belinda Harris-Ritter, Presiding Commissioner
Ramon Estrada, Deputy Commissioner

OTHERS PRESENT:

Rogelio Cordoba, Inmate
Marianne Tardiff, Attorney for Inmate
Michael J. Montagma, Deputy District Attorney
Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____   No          See Review of Hearing
_____   Yes         Transcript Memorandum

**Shelley Kelber    Northern California Court Reporters**

INDEX

| | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 7 |
| Pre-Commitment Factors | 12 |
| Post-Commitment Factors | 17 |
| Parole Plans | 26 |
| Closing Statements | 40 |
| Recess | 45 |
| Decision | 46 |
| Adjournment | 52 |
| Transcriber Certification | 53 |

--oOo-

1

1      **P R O C E E D I N G S**

2           **PRESIDING COMMISSIONER HARRIS-RITTER:**   Okay.

3     Are we on?

4           **DEPUTY COMMISSIONER ESTRADA:**   Yes, we're on.

5           **PRESIDING COMMISSIONER HARRIS-RITTER:**   Okay.

6     Thank you.  Good afternoon.  We are on the record.

7     This is a subsequent parole consideration hearing for

8     Rogelio Cordoba, CDC Number D-22031.  Today's date is

9     September 12th, 2006, and the time is 4:35 p.m.  We're

10    located at CTF, Soledad.  The inmate was received on

11    January 17, 1986, from Los Angeles County.  The life

12    term began on June 11, 1986 and the minimum eligible

13    parole date is November 12, 1995.  The controlling

14    offense for which the inmate has been committed is

15    murder in the second degree, case number LA A762389,

16    count one, Penal Code section 187, and Penal Code

17    section 12022.5 for use of firearm, to wit, a handgun.

18     This hearing is being tape-recorded.  For the purpose

19    of voice identification we will go around the room,

20    state our first name, our last name, spell our last

21    name, and then, Mr. Cordoba, when we get to you if you

22    would also give your CDC number we would really

23    appreciate that, okay.  Thank you.  I will start and go

24    to my left.  I am Belinda Harris-Ritter, H-A-R-R-I-S -

25    R-I-T-T-E-R, Commissioner, Board of Parole Hearings.

26           **DEPUTY COMMISSIONER ESTRADA:**   Ramon Estrada, E-

27    S-T-R-A-D-A, Deputy Commissioner, Board of Parole

2

1   Hearings.

2        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  Michael J.

3   Montagma, M-O-N-T-A-G-M-A, Deputy D-A, LA County.

4        **ATTORNEY TARDIFF:**  Marianne Tardiff, T-A-R-D-I-

5   F-F, attorney for Mr. Cordoba.

6        **INMATE CORDOBA:**  Rogelio Cordoba, C-O-R-D-O-B-

7   A, D-22031.

8        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

9   you.  We also have two correctional peace officers in

10  the room for security purposes.  Mr. Cordoba, there's a

11  sheet of paper right there in front of you, relating to

12  the Americans with Disabilities Act issues.  Could you

13  be kind enough to read that aloud into the record for

14  us.  Thank you.

15       **INMATE CORDOBA:**

16            "The ADA, Americans with Disabilities

17            Act.  The Americans with Disabilities

18            Act, ADA, is a law to help people with

19            disabilities.  Disabilities are problems

20            that make it harder for some people to

21            see, hear, breathe, talk, walk, learn,

22            think, work, or take care of themselves

23            than it is for others.  Nobody can be

24            kept out of public places or activities

25            because of disabilities.  If you have a

26            disability, you have the right to ask

27            for help to get ready for your BPT

3

1       hearing, get to the hearing, talk, read
2       forms and papers, and understand the
3       hearing process.  BPT will look at what
4       you ask for to make sure that you have a
5       disability that is covered by the ADA,
6       and that you have asked for the right
7       kind of help.  If you do not get help,
8       or if you don't think you got the kind
9       of help you need, ask for a BPT 1074
10      Grievance Form.  You can also get help
11      to fill it out."

12      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Great,
13  thank you very much.  And I also note in your file that
14  on 8/23/05 you signed BPT form 1073 indicating that you
15  had no disabilities identified from the file review and
16  do not need any help in your parole hearing related to
17  any issues under the Americans with Disabilities Act.
18  Is that information still correct?

19      **INMATE CORDOBA:**  Yes, ma'am.

20      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.
21  Thank you.  And, Counsel, are there any ADA issues that
22  you believe need further discussion regarding your
23  client's ability to fully participate in today's
24  hearing?

25      **ATTORNEY TARDIFF:**  No.

26      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.
27  Thank you.  Mr. Cordoba, we will reach a decision today

4

1   and inform you whether or not we find you suitable for

2   parole.  We will tell you the reasons for our decision

3   and, if you're found suitable for parole, the length of

4   your confinement will be explained to you.  Before we

5   recess the hearing to deliberate on our decision the

6   district attorney's representative, your attorney, and

7   you will be given an opportunity to make a final

8   statement regarding your suitability.  Your statement

9   will be limited to why you feel you are suitable for

10  parole.  We will then recess, clear the room, and

11  Commissioner Estrada and I will deliberate.  Once we've

12  completed our deliberations we will resume the hearing

13  and announce our decision.  The California Code of

14  Regulations state that regardless of time served, a

15  life inmate shall be found unsuitable for, and denied,

16  parole, if in the judgment of the panel the inmate

17  would pose an unreasonable risk or danger to society if

18  released from prison.  You have certain rights related

19  to your hearing.  Those include the right to a timely

20  notice of the hearing, the right to review your Central

21  File and the right to present relevant documents.

22  Counselor, have your client's rights been met?

23          **ATTORNEY TARDIFF:**  Yes.

24          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

25  you.  And, Mr. Cordoba, you also have a right to an

26  impartial panel.  Do you have any objections to the

27  panel?

5

1      **INMATE CORDOBA:**  No, ma'am.

2      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

3  you.  Counselor, do you have any objections to the

4  panel?

5      **ATTORNEY TARDIFF:**  No.

6      **PRESIDING COMMISSIONER HARRIS-RITTER:**  You will

7  receive a copy of our tentative written decision today.

8   The decision becomes final in 120 days and a copy of

9  the decision and a copy of the transcript will be sent

10  to you.  In 2004 the regulations related to an appeal

11  of our decisions changed.  So if you have questions

12  regarding an appeal, you should ask your attorney or

13  visit the prison law library, all right?

14      **INMATE CORDOBA:**  Yes, ma'am.

15      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay,

16  good.  You are not required to admit or discuss your

17  commitment offense, however the panel does accept as

18  true the findings of the court, do you understand?

19      **INMATE CORDOBA:**  Yes, ma'am.

20      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

21  you.  Commissioner Estrada, is there any confidential

22  material in the file that will be used in this hearing?

23      **DEPUTY COMMISSIONER ESTRADA:**  There is

24  confidential information in the inmate's Central File,

25  and I don't believe it will be used today.

26      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

27  you.  I have passed the hearing checklist, I believe,

6

1   right, the Deputy District Attorney has it.  Miss

2   Tardiff, have you seen it already?

3          **ATTORNEY TARDIFF:**  Yes, I have.

4          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

5   Thank you.

6          **ATTORNEY TARDIFF:**  I have the documents.

7          **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  I also have

8   all the documents.

9          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Great.

10  Then I'll take this into submission as Exhibit 1.  Are

11  there any additional documents to be submitted?

12         **ATTORNEY TARDIFF:**  No.

13         **PRESIDING COMMISSIONER HARRIS-RITTER:**  All

14  right.  Are there any preliminary objections?

15         **ATTORNEY TARDIFF:**  No.

16         **PRESIDING COMMISSIONER HARRIS-RITTER:**  And will

17  Mr. Cordoba be speaking with the panel?

18         **ATTORNEY TARDIFF:**  Except for the commitment

19  offense, and I have a little statement regarding the

20  commitment offense.

21         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

22         **ATTORNEY TARDIFF:**  That I can read into the

23  record later, when it would be an appropriate time.

24         **PRESIDING COMMISSIONER HARRIS-RITTER:**  All

25  right.  That's fine.  Then -- at this time Mr. Cordoba,

26  if you could raise your right hand I'll go ahead and

27  swear you in.  Do you solemnly swear or affirm that the

7

1    testimony you give at this hearing will be truth, the
2    whole truth, and nothing but the truth?
3         **INMATE CORDOBA:**  Yes.
4         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.
5    Thank you.  All right, at this time then I will turn to
6    the appellate opinion.  At the bottom of page 4 -- the
7    page numbers are up at the top right and they're hard
8    to see.
9         **ATTORNEY TARDIFF:**  Thanks.
10        **PRESIDING COMMISSIONER HARRIS-RITTER:**  At the
11   bottom of page 4 begins with the factual statement.
12   And this is the appellate opinion in the Court of
13   Appeal of the State of California, Second Appellate
14   District, Division 1, and it was, it's dated, it looks
15   like 9/15/1988.  In the high upper right hand corner,
16   and it's also stamped June 30th, 1988, by the deputy
17   clerk.  That was probably when it was received.  It's
18   the People v Rogelio Cordoba and Rodney Smith.
19            "On January 30th, 1985, at about 3:00
20            p.m. (inaudible) Harris was walking with
21            four friends in the area of 46th Street
22            and Crenshaw, in Los Angeles.  Defendant
23            Rodney Tommy Smith came around the
24            corner, approached the group, and said
25            'Now what's up,' and then started
26            shooting.  Defendant Smith, known on the
27            street as Snowman, fired four shots and

8

1     a bullet struck Harris just above the
2     ankle.  Harris received medical
3     attention for this injury.  The bullet
4     passed in and out of Harris's ankle and
5     leg, he has scars as a result.  On
6     February 1st, 1985, between 3:00 and 4:00
7     p.m., Willie Rubin, Andre West and
8     Lawrence McIntosh were at the
9     intersection of 9th Avenue and 48th
10    Street in Los Angeles.  Defendant Smith
11    drove up to that location in a beige
12    automobile.  There were a number of
13    passengers in the vehicle, including
14    some girls.  Defendant Smith fired a
15    shot toward Willie Rubin and Andre West,
16    but did not hit either of them, and
17    drove away.  The next day, on February
18    2nd, 1985, Ronnie Luke, L-U-K-E, saw
19    Defendant Smith and Defendant Cordoba,
20    street name Loco Dog, together.  He saw
21    them depart in Defendant Smith's
22    automobile.  At about 7:00 p.m. Willie
23    Rubin and Marvin McIntosh were standing
24    on the sidewalk in front of a residence
25    at 4817 South 9th Street, Los Angeles,
26    waiting for a friend.  Rubin observed a
27    beige automobile coming down the street.

9

1          The car slowed down, the lights were
2     turned off, the car continued proceeding
3     toward Rubin and McIntosh, and passed
4     them.  Rubin and McIntosh, having seen
5     the car approaching with the lights off,
6     thought the situation suspicious and
7     took refuge behind two cars parked in
8     the driveway at 4817.  The car passed
9     4817, and continued to the front of the
10    property next door, where it stopped.
11    Two shots were fired from the car.
12    McIntosh was struck in the head by a
13    bullet, fell to the ground and died from
14    the wound.  Rubin heard someone inside
15    the car say 'cuz,' and that's spelled C-
16    U-Z, and the car sped from the scene.
17    There was testimony that the word cuz
18    was one that was likely to be used by
19    some gang member who was hostile to the
20    Blood gang members.  Ronnie Luke saw
21    Defendant Smith later on the evening of
22    February 2nd, 1985.  Smith told Luke that
23    he and Defendant Cordoba had gone riding
24    for the Fifties-hood.  The Fifties is a
25    gang associated with the Bloods, also a
26    gang.  The hood refers to a
27    neighborhood, an area where members of a

10

1          particular gang live or gather.  The

2          Fifties-hood therefore was a

3          neighborhood where Fifties live or

4          gather.  Smith told Luke he and Cordoba

5          had blasted some Fifties."

6    Now, Mr. Cordoba, I understand that you're not going to

7    be discussing the crime itself, but I'd like to know

8    how do you feel today about your participation in it?

9          **INMATE CORDOBA:**  I'm very remorseful

10   (inaudible) I take full responsibility for the crime

11   that which I committed against Mr. Marvin McIntosh.

12         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Were you

13   involved in a gang?

14         **INMATE CORDOBA:**  No, ma'am.

15         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Were you

16   involved in other criminal activity with these same

17   people?

18         **INMATE CORDOBA:**  No, ma'am.

19         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Can you

20   tell us how you got yourself to be in that situation

21   that you were in at the time the crime was committed?

22         **INMATE CORDOBA:**  That day, or that night, I was

23   supposed to go and DJ at a party in Riverside and I

24   didn't have no way to get there, so I asked (inaudible)

25   could he give me a ride.  So, but we decided to go to a

26   McDonalds and on the way back from McDonalds, that's

27   when the incident happened.

11

1       **PRESIDING COMMISSIONER HARRIS-RITTER:**  So you

2  never got to Riverside? Is that correct?

3       **INMATE CORDOBA:**  Yes, afterward.

4       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Oh, you

5  did go to Riverside.

6       **INMATE CORDOBA:**  Yes, after we came back from

7  McDonalds.

8       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Did you

9  know those people prior to that crime?

10      **INMATE CORDOBA:**  Yes, I knew them.

11      **PRESIDING COMMISSIONER HARRIS-RITTER:**  The

12  people who were shot?

13      **INMATE CORDOBA:**  Yes.

14      **PRESIDING COMMISSIONER HARRIS-RITTER:**  And how

15  did you know them?

16      **INMATE CORDOBA:**  Because I used to play

17  basketball at the high school.

18      **PRESIDING COMMISSIONER HARRIS-RITTER:**  Your

19  prior criminal record, it does include an arrest when

20  you were a juvenile, it was an arrest for robbery.  Do

21  you recall that?

22      **INMATE CORDOBA:**  Yes, ma'am.

23      **PRESIDING COMMISSIONER HARRIS-RITTER:**  What

24  happened in that situation?

25      **INMATE CORDOBA:**  Well, the way that situation

26  was down, there was some guys coming around the area,

27  the neighborhood, stealing the kids' bikes, so

12

1    (inaudible) kids on the block, I decided to go get the

2    bikes back.  I was arrested, but it wasn't for stealing

3    the bike.

4         **PRESIDING COMMISSIONER HARRIS-RITTER:**  You

5    (inaudible) the stolen bikes?

6         **INMATE CORDOBA:**  Yeah, (inaudible) I went back

7    to get it for the kids in the neighborhood.

8         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

9    And then a year later you have, it looks like an arrest

10   with no disposition, in February of 1984, from

11   trespassing at a junior high school?

12        **INMATE CORDOBA:**  That was the same.

13        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Same

14   situation?

15        **INMATE CORDOBA:**  Same thing as with the bikes,

16   with the bicycles.  The guys coming up to the high

17   school, the junior high school and stealing the kids'

18   bicycle and I was only going up there to make sure they

19   didn't steal any bikes.  So they arrest me for

20   trespassing.

21        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

22   And those are your only two prior crimes, is that

23   right?

24        **INMATE CORDOBA:**  Yes, ma'am.

25        **PRESIDING COMMISSIONER HARRIS-RITTER:**  In the

26   crime report it indicates that you were never an

27   official gang member, but you played basketball with

13

1   them, just like you told me, right?

2          **INMATE CORDOBA:**  (inaudible)

3          **PRESIDING COMMISSIONER HARRIS-RITTER:**  And, you

4   grew up, is it with both your parents in the house?

5          **INMATE CORDOBA:**  Yes, ma'am.

6          **PRESIDING COMMISSIONER HARRIS-RITTER:**  And you

7   moved here to California from the Virgin Islands,

8   right?

9          **INMATE CORDOBA:**  Yes, ma'am.

10         **PRESIDING COMMISSIONER HARRIS-RITTER:**  But you

11  moved to the Virgin Islands from Panama.  And how old

12  were you when you came to California?

13         **INMATE CORDOBA:**  I think I was about 13.

14         **PRESIDING COMMISSIONER HARRIS-RITTER:**  How

15  much?

16         **INMATE CORDOBA:** Thirteen.

17         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.  I

18  have problems, I have an ear infection, so it's hard

19  for me to hear today.  And how old were you when you

20  went from Panama to the Virgin Islands?

21         **INMATE CORDOBA:**  Nine.

22         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

23  And did you have any trouble in school here?

24         **INMATE CORDOBA:**  No, ma'am.

25         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Did you

26  drop out of school or were you still in school?

27         **INMATE CORDOBA:**  I dropped out in the 12th grade

14

1    (inaudible) I dropped out.

2        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Did you

3    participate in any activities at school?

4        **INMATE CORDOBA:**  Yes.

5        **PRESIDING COMMISSIONER HARRIS-RITTER:**  What was

6    that?

7        **INMATE CORDOBA:**  Well, I did drama class.

8        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Anything

9    else?

10       **INMATE CORDOBA:**  Matter of fact, I said I

11   played in sports; football and basketball and I ran in

12   track.

13       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Were you

14   on any school teams?

15       **INMATE CORDOBA:**  Football teams, yeah.

16       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

17       **INMATE CORDOBA:**  Football and basketball.

18       **PRESIDING COMMISSIONER HARRIS-RITTER:**  So that

19   wasn't just participating in inter-murals, it was

20   actually on a team?

21       **INMATE CORDOBA:**  On a team, yes ma'am.

22       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

23   And, were these guys, that you were hanging out with,

24   people who had been friends of yours since elementary

25   school, or junior high?

26       **INMATE CORDOBA:**  I wouldn't say friends, it was

27   just guys I had I been in (inaudible) same, you know,

15

1   at the same, you know, elementary school, I played

2   basketball on an (inaudible).

3           **PRESIDING COMMISSIONER HARRIS-RITTER:**   Okay.

4   And that's why you asked the guy for a ride, right?

5           **INMATE CORDOBA:**   Yes, because I knew him.

6           **PRESIDING COMMISSIONER HARRIS-RITTER:**   Okay.

7   Do you have anything you want to add about your social

8   history that I haven't talked to you about?

9           **INMATE CORDOBA:**   No, ma'am.

10          **PRESIDING COMMISSIONER HARRIS-RITTER:**   You want

11  to tell me about your brothers and sisters?   How you

12  get along?

13          **INMATE CORDOBA:**   Well, we get along.   We're a

14  tight knit family.   In 1987 my sister was, perished in

15  the line of fire in Panama.   There was an invasion,

16  when America invaded Panama in 1987, she was basically

17  in the line of fire.   (inaudible) so she died doing

18  that and they took her body and put it into the ocean.

19   When I left Panama she was, when I was a kid, I really

20  didn't, wasn't around her that much, but she decided to

21  stay with our grandmother in Panama.   My two brothers,

22  they came out here with us, both of them have their own

23  businesses now.   My brother, Rodolfo, he got his

24  business in graphic art and design and landscaping.

25  And my other brother, he's teaching, he has a Tae Kwon

26  Do class, Orlando.

27          **PRESIDING COMMISSIONER HARRIS-RITTER:**   Okay.

16

1  And your mother and father are still here?

2          INMATE CORDOBA:  Yes, ma'am.

3          PRESIDING COMMISSIONER HARRIS-RITTER:  Have you

4  -- have a lot of contact with your parents and your

5  brothers?

6          INMATE CORDOBA:  Yeah, they come to visit.

7          PRESIDING COMMISSIONER HARRIS-RITTER:  Okay,

8  and they also send you letters?

9          INMATE CORDOBA:  Yes.

10          PRESIDING COMMISSIONER HARRIS-RITTER:  What

11  about on the phone?  Do you call them?

12          INMATE CORDOBA:  Yes, once a week.

13          PRESIDING COMMISSIONER HARRIS-RITTER:  Okay.

14  Commissioner Estrada, do you have any questions you'd

15  like to ask about the prior criminal history or social

16  background?

17          DEPUTY COMMISSIONER ESTRADA:  I have a question

18  regarding your nickname, Loco Doc?

19          INMATE CORDOBA:  Yeah.

20          DEPUTY COMMISSIONER ESTRADA:  Loco Doc?

21          INMATE CORDOBA:  I don't know, you know, about

22  the Loco.  My nickname was just Doc, and I got that

23  name put on (inaudible) coach back in the days when I

24  was playing basketball and the coach wanted us to us

25  take a name of a very good basketball player, so I

26  chose one like Doctor J, so all my friends started

27  calling me the Doc.  That's where the name Doc came

17

1    from.

2            **DEPUTY COMMISSIONER ESTRADA:**  And they didn't

3    call you Loco Doc?

4            **INMATE CORDOBA:**  No, sir.

5            **DEPUTY COMMISSIONER ESTRADA:**  That's all I have

6    for right now.

7            **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

8    Well, then at this time I'm going to turn the hearing

9    over to Commissioner Estrada to talk about your post

10   conviction factors.  After he's finished with that then

11   he'll give the hearing back to me and we'll talk about

12   parole plans, okay?

13           **DEPUTY COMMISSIONER ESTRADA:**  Thank you.  Good

14   afternoon, Mr. Cordoba.

15           **INMATE CORDOBA:**  (inaudible)

16           **DEPUTY COMMISSIONER ESTRADA:**  (inaudible) post

17   conviction information through your Central Files, as a

18   life prisoner, evaluation report prepared for the

19   November 2005 calendar by correction counselor I

20   (inaudible), post conviction progress report covering

21   the period of September 2004 (inaudible) prepared by

22   (inaudible) Baker and (inaudible) Valtajar, V-A-L-T-A-

23   J-A-R.  And a psychological evaluation prepared for the

24   June 2006 calendar by Dr. Macomber, spelled M-A-C-O-M-

25   B-E-R.  As (inaudible) last parole consideration

26   hearing on November 1st, 2004, it was held that

27   (inaudible) denied parole for one year and recommended

18

1    that the inmate stay disciplinary free, get self-help,

2    earn positive chronos, and get a GED.  (inaudible)

3    score last year was 19 and continues to be 19, correct?

4         **INMATE CORDOBA:**  Yes, sir.

5         **DEPUTY COMMISSIONER ESTRADA:**  (inaudible)

6    continues to be (inaudible), correct?

7         **INMATE CORDOBA:**  Yes, sir.

8         **DEPUTY COMMISSIONER ESTRADA:**  In reviewing your

9    Central File and the (inaudible) Report, and the

10   psychological report, there are indications that you

11   completed vocational welding.

12        **INMATE CORDOBA:**  Yes, sir.

13        **DEPUTY COMMISSIONER ESTRADA:**  You have that

14   certificate?

15        **INMATE CORDOBA:**  Yes, sir.

16        **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Thank you.

17   Okay, July -- He completed vocational welding on July

18   3rd, 1992, correct?

19        **INMATE CORDOBA:**  Yes, sir.

20        **DEPUTY COMMISSIONER ESTRADA:**  And this is your

21   license?

22        **INMATE CORDOBA:**  Yes, sir.

23        **DEPUTY COMMISSIONER ESTRADA:**  Okay, very good.

24   Now, and I also see you completed vocational training

25   technology?

26        **INMATE CORDOBA:**  Yes, sir.

27        **DEPUTY COMMISSIONER ESTRADA:**  Okay.  And that

19

1   was about, you have the certificate for that?  -- Okay,

2   this is dated February 5th, 2004, training technology,

3   from Valley Adult School, your certificate of

4   completion.  Do you have anything else?

5          **INMATE CORDOBA:**  You mentioned something about

6   my GED?  Getting a GED?

7          **DEPUTY COMMISSIONER ESTRADA:**  We're not there,

8   we're still on vocational.

9          **INMATE CORDOBA:**  Oh, vocational, no sir.

10         **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Now, now

11  we're doing the GED.  I did see that in your Central

12  File, that you completed your GED on May 28th, 1997,

13  correct?

14         **INMATE CORDOBA:**  Yes, sir.

15         **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Have you

16  done any, anything else regarding upgrading

17  academically?

18         **INMATE CORDOBA:**  Besides the GED, no sir.

19         **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Now, are

20  you working?

21         **INMATE CORDOBA:**  Yes, sir.

22         **DEPUTY COMMISSIONER ESTRADA:**  Where are you

23  working?

24         **INMATE CORDOBA:**  Recreational department.

25         **DEPUTY COMMISSIONER ESTRADA:**  Oh, yeah, here's

26  an indication that you started out there in 4/2005.

27  (inaudible) supervisor's report?

20

1        **INMATE CORDOBA:**  There should be in my file.
2    (inaudible).
3        **DEPUTY COMMISSIONER ESTRADA:**  From, from
4    recreational --
5        **INMATE CORDOBA:**  Yes.
6        **DEPUTY COMMISSIONER ESTRADA:**  -- worker?  I
7    could not find anything.
8        **INMATE CORDOBA:**  (inaudible)
9        **DEPUTY COMMISSIONER ESTRADA:**  They did your
10    (inaudible) review?
11        **INMATE CORDOBA:**  Yes, sir.
12        **DEPUTY COMMISSIONER ESTRADA:**  (inaudible) The
13    only thing in your file is your completion of the
14    vocational training technology, there's nothing else
15    regarding any type of work.  (inaudible)
16        **INMATE CORDOBA:**  No, sir (inaudible).
17        **DEPUTY COMMISSIONER ESTRADA:**  I thought you
18    declined to review your (inaudible) Central File.  You
19    signed an A2305 and you declined to review your Central
20    File.
21        **INMATE CORDOBA:**  I did, that was when, my board
22    hearing was postponed, I believe.
23        **DEPUTY COMMISSIONER ESTRADA:**  So (inaudible)
24    after that?
25        **INMATE CORDOBA:**  Yes.
26        **DEPUTY COMMISSIONER ESTRADA:**  Okay, okay,
27    there's nothing in the Central File (inaudible).  No, I

21

1    don't see (inaudible).

2           **INMATE CORDOBA:**  Yes, my instructor gave me one

3    that's --

4           **DEPUTY COMMISSIONER ESTRADA:**  (inaudible).

5           **INMATE CORDOBA:**  No, what I did was, before I

6    went to the counselor and had (inaudible) --

7           **DEPUTY COMMISSIONER ESTRADA:**  Did you get a

8    copy?

9           **INMATE CORDOBA:**  Yeah, it was in (inaudible).

10          **DEPUTY COMMISSIONER ESTRADA:**  Oh, (inaudible)

11   indicating that you're working as a recreational

12   worker?

13          **INMATE CORDOBA:**  Recreational worker.  What my

14   job is, is --

15          **DEPUTY COMMISSIONER ESTRADA:**  Yeah.

16          **INMATE CORDOBA:**   -- I run the football and

17   basketball league here at Central, Central (inaudible).

18          **DEPUTY COMMISSIONER ESTRADA:**  Okay.  You have

19   any laudatory chronos indicating your participation?

20          **INMATE CORDOBA:**  No, sir.

21          **DEPUTY COMMISSIONER ESTRADA:**  Okay.

22   (inaudible) psychiatric treatment, correct?

23          **INMATE CORDOBA:**  Correct.

24          **DEPUTY COMMISSIONER ESTRADA:**  And the only

25   thing I see that you've completed during this reporting

26   period has been a series of lectures on January 5th,

27   2005, on how to (inaudible) and not get angry.

22

1        **INMATE CORDOBA:**  Yes.

2        **DEPUTY COMMISSIONER ESTRADA:**  Okay. And you

3   haven't done any other self-help, correct?

4        **INMATE CORDOBA:**  I'm currently in a RAG

5   program.

6        **DEPUTY COMMISSIONER ESTRADA:**  A what program?

7        **INMATE CORDOBA:**  RAG, R-A-G, Re-entry Activity

8   Group Program.

9        **DEPUTY COMMISSIONER ESTRADA:**  (inaudible)

10        **INMATE CORDOBA:**  (inaudible)

11        **PRESIDING COMMISSIONER HARRIS-RITTER:**  And your

12   anger management.

13        **DEPUTY COMMISSIONER ESTRADA:**  Okay.  This does

14   indicate that you're an active member in good standing.

15   Then let me (inaudible) re-entry activity group, RAG,

16   okay.  This is (inaudible) preparedness program --

17   (inaudible) parole plans and assisting the particular

18   needs of the individual.  Have you been on parole

19   before?

20        **INMATE CORDOBA:**  No, sir.

21        **DEPUTY COMMISSIONER ESTRADA:**  (inaudible)

22        **INMATE CORDOBA:**  (inaudible) and find out

23   (inaudible) and pass it on to a sponsor, which is

24   (inaudible).

25        **DEPUTY COMMISSIONER ESTRADA:**  So you should

26   have some real good parole plans then right?

27        **INMATE CORDOBA:**  Yes, sir.

23

1    **DEPUTY COMMISSIONER ESTRADA:**  Okay.

2 (inaudible) certificate of completion of anger

3 management for, and that was completed on 12/3/04.

4 (inaudible) Anything else?

5    **INMATE CORDOBA:**  No, sir.

6    **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Since

7 you've been in state prison you've received a total of

8 two 115s, the last of them on June 23rd, 1988, for theft

9 of state food, and you were found guilty and you were

10 ordered on 20 hours of extra duty, and the one before

11 that was on November 19, 1987, for threatening staff

12 and you got 30 days (inaudible).  The last 115 was 18

13 years ago, 18 years, 3 months?

14    **INMATE CORDOBA:**  Yes, sir.

15    **DEPUTY COMMISSIONER ESTRADA:**  Okay.  There's no

16 violence (inaudible) before that.  Now, you have total

17 of (inaudible) chronos and your last one was December

18 27th, 1995, for, talking responsibility for (inaudible),

19 so you have not had any (inaudible) problems for

20 (inaudible) almost nine months.

21    **INMATE CORDOBA:**  Yes sir, correct.

22    **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Going to

23 your (inaudible) indicates that prior to release the

24 prisoner could benefit from maintaining a disciplinary

25 free record, participating in self-help (inaudible) and

26 participating (inaudible) college correspondence

27 courses.  Are you doing any college correspondence

24

1    courses?

2        **INMATE CORDOBA:**  No, sir.

3        **DEPUTY COMMISSIONER ESTRADA:**  Okay.  And

4    participating in a work program, I guess that would be

5    your recreational worker?

6        **INMATE CORDOBA:**  Yes, sir.

7        **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Are you

8    (inaudible) prepared for you and was completed for this

9    hearing by Dr. Macomber and the doctor indicates a

10   diagnosis of Axis I, no mental disorder, Axis II, no

11   personality disorder, and you have a (inaudible) score

12   of 85.  Now, in regards to the view of the life crime,

13   it does indicate that you accept the official version

14   of the offense and you accept full responsibility for

15   your actions (inaudible) feel badly about (inaudible)

16   accidentally killed as a result of your action.

17   (inaudible) accidentally killed?

18       **INMATE CORDOBA:**  No, sir. I did not say

19   accidentally.

20       **DEPUTY COMMISSIONER ESTRADA:**  Huh?

21       **INMATE CORDOBA:**  I did not say accidentally.

22       **DEPUTY COMMISSIONER ESTRADA:**  Okay.  And

23   indicated that he did not know about, anything about

24   guns and that he had never shot one before (inaudible)

25   gun and ordered him to shoot, he did.  It was dark and

26   he did not aim and, however, he accidentally, again,

27   shot the 19-year-old victim.  These were individuals

25

1   whom he had played basketball with, he had no animosity
2   or hatred towards them at all.  Okay.  In regards to
3   assessment of dangerousness, the doctor indicates that
4   this was a third examination by a licensed psychologist
5   to assess dangerousness.  They all agree that he does
6   not pose a risk to the institution or to society at
7   this point in his life.  He has never been involved in
8   a racial riot, assault of another, possession of
9   weapons or other (inaudible) with regards to inmate's
10  violence potential they designate below average.
11  (inaudible) for dangerous behavior when released to the
12  community, I agree with the prior three psychologists
13  and stated that he poses no more risk to society than
14  the average citizen.  He does not pose
15  any more risk to society than the average citizen.  In
16  fact, (inaudible) probably poses less risk to the
17  community than the average citizen.  This man has no
18  history of drugs and/or alcohol abuse or gang
19  membership.  There are no significant risk factors in
20  this case.  In regards to recommendations I (inaudible)
21  do have strong family support (inaudible) vocational
22  programs and that you have several alternate job
23  opportunity (inaudible) and that you do have
24  (inaudible).
25          **INMATE CORDOBA:**  Yes, sir.
26          **DEPUTY COMMISSIONER ESTRADA:**  (inaudible) this
27  one says you need an interview, I don't know  --

26

1    **PRESIDING COMMISSIONER HARRIS-RITTER:**  Can I, I

2    want to touch, OK, that's fine.

3        **ATTORNEY TARDIFF:**  (inaudible)

4                **(Off the record)**

5        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay,

6    we're back on the record, everyone who was previously

7    present is still in -- is present again.

8        **ATTORNEY TARDIFF:**  I'm going to (inaudible)

9    that my client is willing to discuss the commitment

10   offense with you.

11       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

12       **ATTORNEY TARDIFF:**  I just talked to him about

13   it, I think it's important that he clear a few things

14   up.

15       **PRESIDING COMMISSIONER HARRIS-RITTER:**  I

16   appreciate that very much, particularly in light of the

17   question regarding what's in the psych report.  You

18   want to go ahead and --

19       **DEPUTY COMMISSIONER ESTRADA:**  Yeah, I'm almost

20   finished.

21       **PRESIDING COMMISSIONER HARRIS-RITTER:**  That's

22   fine and then we'll go back to the crime.

23       **DEPUTY COMMISSIONER ESTRADA:**  Okay. (inaudible)

24   an INS hold from Panama.  I don't see a immigration

25   ruling in the Central File.  I don't know, it just says

26   that you need an interview, but, an immigration hold, I

27   don't see one.

27

1    **PRESIDING COMMISSIONER HARRIS-RITTER:**  Did you

2    have an interview in April with anybody related to

3    that?

4    **INMATE CORDOBA:**  (inaudible) my counselor

5    informed me that I had (inaudible).

6    **DEPUTY COMMISSIONER ESTRADA:**  Because I checked

7    both files and there's nothing in there about it too,

8    and I checked up on it and I thought I had just a piece

9    of paper potential, there is a potential that you need,

10   you're going to need an interview.

11   **INMATE CORDOBA:**  Yeah.

12   **DEPUTY COMMISSIONER ESTRADA:**  But it's

13   (inaudible) you are here illegally they will contact

14   immigration (inaudible).

15   **INMATE CORDOBA:**  Yes.

16   **DEPUTY COMMISSIONER ESTRADA:**  (inaudible)

17   **INMATE CORDOBA:**  Yes.

18   **DEPUTY COMMISSIONER ESTRADA:**  Anyway, to finish

19   up, it does indicate your family is now legal,

20   naturalized citizens and you are registered for the

21   process.  However, he does have residence in Panama as

22   well as several other family members who live there.

23   (inaudible) Okay, now, (inaudible) Mr. Cordoba?

24   **INMATE CORDOBA:**  No, sir.

25   **DEPUTY COMMISSIONER ESTRADA:**  Okay, Counsel?

26   **ATTORNEY TARDIFF:**  No, not at this time.

27   **DEPUTY COMMISSIONER ESTRADA:**  Okay.  With that

28

1    I return to the Chair.

2           **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

3    you very much.  Let's go back and talk about the crime

4    now.  Mr. Cordoba, can you tell us why you were in that

5    car shooting that gun that night?

6           **INMATE CORDOBA:**  Well, on that night, when we

7    were, when we were coming from McDonalds, Mr. Smith,

8    said that someone was shooting at him.  I didn't see

9    anyone shooting at him, because I had the car seat

10   back.  You know, the driver's seat, the passenger seat,

11   I mean, excuse me,(inaudible) I didn't see nobody

12   shooting (inaudible) but I didn't see nobody shooting

13   at us, but he said that somebody was shooting at us, so

14   he reached up under the car seat, handed me a gun and

15   told me (inaudible).  It was a (inaudible) and stuck

16   the gun --

17          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

18   And you did, right?

19          **INMATE CORDOBA:**  (inaudible) fired one shot and

20   we left.  He kept driving on.

21          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Were you

22   not stopped in front of that house at 4817 when you did

23   that?

24          **INMATE CORDOBA:**  Probably slowed down, yes.

25   Slowed down, might have stopped, I don't remember.

26          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

27          **INMATE CORDOBA:**  I know we slowed down.

29

1    **PRESIDING COMMISSIONER HARRIS-RITTER:**    And you

2    just shot out the window --

3        **INMATE CORDOBA:**    Just shot out the window.

4        **PRESIDING COMMISSIONER HARRIS-RITTER:**    -- and

5    accidentally hit somebody right in the head?

6        **INMATE CORDOBA:**    Without, yeah, without aiming.

7        **PRESIDING COMMISSIONER HARRIS-RITTER:**    Okay.

8    The report says that you accidentally, that somebody

9    accidentally got shot.  You indicated you did not use

10   that word accidentally.  Do you recall what you did say

11   to the psychologist?

12       **INMATE CORDOBA:**    No, I don't recall.

13       **PRESIDING COMMISSIONER HARRIS-RITTER:**    Okay. Go

14   ahead.

15       **INMATE CORDOBA:**    The reason why -- I may have

16   said accidentally is because, like I said, when he got

17   shot, because I didn't mean to kill anyone or hurt

18   anyone, I was just shooting because they scared me.

19       **PRESIDING COMMISSIONER HARRIS-RITTER:**    But you

20   know when you stick a gun out a window and pull the

21   trigger --

22       **INMATE CORDOBA:**    Yes, I know.

23       **PRESIDING COMMISSIONER HARRIS-RITTER:**    There's

24   a real good chance somebody's going to get hit, right?

25       **INMATE CORDOBA:**    Yes.

26       **PRESIDING COMMISSIONER HARRIS-RITTER:**    Okay.

27   All right.  Do you have any questions you'd like to ask

30

1    him about the crime itself, Commissioner Estrada?

2            **DEPUTY COMMISSIONER ESTRADA:**  No, not yet, no.

3            **PRESIDING COMMISSIONER HARRIS-RITTER:**  Were the

4    other people, who else, were just two of you in the

5    car?

6            **INMATE CORDOBA:**  (inaudible)

7            **PRESIDING COMMISSIONER HARRIS-RITTER:**  Was the

8    other guy a gang member?

9            **INMATE CORDOBA:**  Yes, ma'am.

10           **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

11   Were the people that you shot at gang members?

12           **INMATE CORDOBA:**  (inaudible)

13           **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

14   (inaudible) Let's look at your parole plan now.  A

15   number of support letters have been received and let me

16   go through the ones I have in the file first and then

17   we'll deal with the one your attorney gave me today.

18   There's one from your mother, dated June 19th, 2006, who

19   lives in Los Angeles and indicated that if you're

20   released here you can live with her.  And there's one

21   from Reverend Richard Martini, pastor of the Church of

22   the Transfiguration in Los Angeles, who sends a letter

23   in support of you dated May 17th, 2006.  There's one

24   from your cousin Delfino Lewis in Columbus, Georgia,

25   who writes June 5th, 2006, in support of you.  There's

26   one, June 1st, 2006, from Empire Mainstay Maintenance

27   Service, which is in Rialto, I think that's just over

31

1    the line in San Bernardino County, and it's a job offer
2    from Rodolfo Cordoba, is he your brother?
3            INMATE CORDOBA:  My brother.
4            PRESIDING COMMISSIONER HARRIS-RITTER:  All
5    right.  And a letter from May 29th, 2006 from your
6    father, with a Los Angeles address, and states, on my
7    son's release from prison his family and I back in
8    Panama will receive him home and have a place for him
9    to stay (inaudible) over.  So is he saying that he
10   would also go to Panama?
11           INMATE CORDOBA:  Yes, ma'am.
12           PRESIDING COMMISSIONER HARRIS-RITTER:  Okay.
13   And then November 17th, 2004, a letter from your uncle,
14   is it your uncle Ambrose or --
15           INMATE CORDOBA:  Ambrose, that's right.
16           PRESIDING COMMISSIONER HARRIS-RITTER:   -- All
17   right.  In Panama, this has been translated and says
18   that here in Panama I have my own house with three
19   bedrooms.  My son Armando works with the police
20   department as a musician, he lives with his girlfriend
21   so you can live with me.  They also have two businesses
22   here in Panama, a fast food and another of a restaurant
23   for all.  We have (inaudible) construction and can work
24   with me.  So it appears I would offer you, with his
25   brother-in-law (inaudible) import-export business.
26   He's also willing to help you so you don't have to
27   worry about work or where to live.  And (inaudible)

32

1   letters in the file and here we have a letter of

2   support from Earl (inaudible) Williams (inaudible)

3   Trucking Company, and they're offering you a job, is

4   that correct?

5        **INMATE CORDOBA:**  Yes, ma'am.

6        **PRESIDING COMMISSIONER HARRIS-RITTER:**  And I

7   note you have the date on there, but I believe that's

8   August 25th, on the envelope, of 2006?  So there's a job

9   offer from Victory Upholstery Studio, from Victor, and

10  what is Victor's last name?

11       **INMATE CORDOBA:**  That's my father's friend.

12       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.  I

13  can't read his handwriting, so I don't know his last

14  name.  You know what it is?

15       **INMATE CORDOBA:**  No, ma'am.

16       **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

17  He's willing to offer you, it's okay if you don't --

18       **INMATE CORDOBA:**  (inaudible)

19       **PRESIDING COMMISSIONER HARRIS-RITTER:**   -- I'm

20  willing to offer him an entry level position with our

21  firm and the position will begin at minimum wage

22  earnings and that's located in Los Angeles.  Then

23  there's a letter dated Friday, August 18th, 2006, from

24  Jerry's Upholstery (sic), from Jerry Walsh saying he's

25  a friend of the family and he would offer you a job in

26  his welding shop.  And there's a letter from

27  (inaudible) Preschool in Los Angeles on Vermont,

33

1    offering you -- from Faron Davison, a owner, Davison,

2    D-A-V-I-S-O-N, Faron, F-A-R-O-N, offering you an entry

3    level position with the childcare center, dated, the

4    envelope is dated August 25th. And then a letter from

5    Bob's Sewer and Drain Cleaning, Incorporated, offering

6    you a job. And offering to assist you financially in

7    any small way. And that's also dated August 28th, with

8    the envelope. There's the original letter from your

9    brother, from Empire Mainstay, that I've already

10   referred to.   Then there's another letter, this one is

11   from Columbus, Georgia, from (inaudible) dated June 5th,

12   2006, she's your aunt?

13            **INMATE CORDOBA:** Yes, ma'am.

14            **PRESIDING COMMISSIONER HARRIS-RITTER:** And she

15   supports (inaudible) another copy of the letter from

16   Reverend Martini from the Church of the Transfiguration

17   that I've already referred to.   And here's a letter

18   dated June 22nd from a (inaudible) Alexander and this is

19   a letter of support as well.   And that's dated June

20   22nd.   There's another copy of the letter from your aunt

21   (inaudible) in Georgia.   Here we have (inaudible) a

22   letter from your father that I already read, another

23   copy, and another copy of the letter from your mother.

24    So we seem to have some confusion to be determined

25   here related to whether or not you'd be deported to

26   Panama, if you are paroled.   That will, that will need

27   to be cleared up.   So I would recommend that you

34

1   contact your counselor and try to get that straightened

2   out.  But anyway, you have job offers here or you have

3   a job offer in Panama, and you also have a residence in

4   Panama and a residence with your mother, is that right?

5    Did I remember that correctly?  All right.  And, is

6   there anything else that you would like to add related

7   to your parole plans that we haven't talked about?

8           **INMATE CORDOBA:**  No, ma'am.

9           **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

10  Do you have any questions regarding parole plans that

11  you'd like to ask, Commissioner Estrada?

12          **DEPUTY COMMISSIONER ESTRADA:**  No.

13          **PRESIDING COMMISSIONER HARRIS-RITTER:**  All

14  right.  Then I'll move on to note that the Penal Code

15  section 3042 notices were sent out and in response to

16  those notices we do have Mr. Montagma from the district

17  attorney's office in L-A County here.

18          **DEPUTY COMMISSIONER ESTRADA:**  I do have a

19  question.

20          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

21          **DEPUTY COMMISSIONER ESTRADA:**  Okay, I'll make

22  it quick here.  And this is in regards to the appellate

23  decision.  You (inaudible) correct?

24          **INMATE CORDOBA:**  Correct.

25          **DEPUTY COMMISSIONER ESTRADA:**  You've never been

26  a member of the (inaudible) Crips?

27          **INMATE CORDOBA:**  No, sir.

35

1    **DEPUTY COMMISSIONER ESTRADA:**  Or the

2    (inaudible)?

3    **INMATE CORDOBA:**  No, sir, I just live in the

4    neighborhood.

5    **DEPUTY COMMISSIONER ESTRADA:**  You just live in

6    the neighborhood, huh?

7    **INMATE CORDOBA:**  Yes, sir.

8    **DEPUTY COMMISSIONER ESTRADA:**  Okay (inaudible)

9    on page (inaudible) as they drove by and then fired one

10   shot.

11   **INMATE CORDOBA:**  That's not true.

12   **DEPUTY COMMISSIONER ESTRADA:**  Okay.  Then the

13   next paragraph, at the bottom, the last sentence,

14   (inaudible) to check out the story and (inaudible) was

15   interviewed by police detective and told him that

16   Defendant Smith had told him that he and Defendant

17   Cordoba just shot at some Bloods on 9th Avenue.  The

18   following morning, February 3rd, Luke saw Defendant

19   Smith again (inaudible) was dead and Smith had said

20   "Then Loco is in trouble." Are you Doc or Loco Doc?

21   **INMATE CORDOBA:**  Doc sir.  I'm not allowed to

22   go by that name, I changed my name.  I'm a Muslim, my

23   name is Malachi, sir.

24   **DEPUTY COMMISSIONER ESTRADA:**    -- Okay, I have

25   nothing else.

26   **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

27   you.  As I indicated Penal Code section 3042 notices

1  were sent out.  Those notices go to agencies with a

2  direct interest in the case and in response to that we

3  have Mr. Montagma from the district attorney's office

4  in Los Angeles County who is going to be able to ask

5  you questions and make a closing statement.  At this

6  time, if you have, do you have any additional questions

7  Commissioner Estrada on any area?

8          **DEPUTY COMMISSIONER ESTRADA:**  I have none.

9          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Okay.

10  Thank you.  Then I'll go to the deputy district

11  attorney, Mr. Montagma, do you have any questions for

12  Mr. Cordoba?

13          **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  Mr.

14  Cordoba, when you described to the commissioner, how

15  you fired the shot, you had you hand up higher than

16  your head, apparently the gun pointed (inaudible)?

17          **INMATE CORDOBA:**  To the side, inaudible) over

18  the top of the car.

19          **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  You were on

20  the passenger side, is that correct?

21          **INMATE CORDOBA:**  Yes, sir.

22          **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  And did you

23  fire with your right or your left hand?

24          **INMATE CORDOBA:**  Right hand.

25          **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  So you

26  would have had to go like this?

27          **INMATE CORDOBA:**  No.  (inaudible) on this side.

37

1        **PRESIDING COMMISSIONER HARRIS-RITTER:**  So the

2  victim was on the driver's side?

3        **INMATE CORDOBA:**  On the driver's side.

4        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Of the

5  car.  And you shot over the car.

6        **INMATE CORDOBA:**  Over the car.

7        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  You shot

8  over the top of the car?

9        **INMATE CORDOBA:**  Yes.

10        **PRESIDING COMMISSIONER HARRIS-RITTER:**  From the

11  passenger side.

12        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  From the

13  passenger side.  You're on the passenger side.

14        **PRESIDING COMMISSIONER HARRIS-RITTER:**  Yes.

15        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  (inaudible)

16  like this, is that correct?

17        **INMATE CORDOBA:**  Yes, sir.

18        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  This was a

19  blue stone revolver?

20        **INMATE CORDOBA:**  Excuse me?

21        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  A blue

22  stone revolver?

23        **INMATE CORDOBA:**  I don't remember (inaudible)

24        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  You know

25  Rodney Luke, is that correct sir?

26        **INMATE CORDOBA:**  Yeah, I know Rodney Luke.

27        **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  Did you

38

1  ever have this or a similar type gun or any gun at all

2  in your possession before this day?

3  　　　　**INMATE CORDOBA:**  No, sir.

4  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  Mr. Luke

5  told the police that he'd seen you in the recent past

6  with a blue stone revolver, is that true?

7  　　　　**INMATE CORDOBA:**  No, sir.

8  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  It's not

9  true?

10  　　　　**INMATE CORDOBA:**  No, sir.

11  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  At any

12  prior board hearing did you indicate that you were a

13  member of (inaudible) Crips?

14  　　　　**INMATE CORDOBA:**  Never.

15  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  How many

16  shots did you fire?

17  　　　　**INMATE CORDOBA:**  I only remember one but

18  (inaudible) they say that I fired two, so I guess two

19  shots.

20  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  But you

21  were trying to point your gun in the direction of these

22  two men?

23  　　　　**INMATE CORDOBA:**  Excuse me?

24  　　　　**DEPUTY DISTRICT ATTORNEY MONTAGMA:**  You were

25  trying to point your gun in the direction of these two

26  men?

27  　　　　**INMATE CORDOBA:**  No, I didn't even know where

39

1  they was at.  I was firing in the direction where Mr.

2  Smith had told me they was at.

3     **DEPUTY DISTRICT ATTORNEY MONTAGMA**:  I have

4  nothing further.

5     **PRESIDING COMMISSIONER HARRIS-RITTER**:  Thank

6  you.  Miss Tardiff?

7     **ATTORNEY TARDIFF**:  So originally you got into

8  the automobile for what purpose?

9     **INMATE CORDOBA**:  To go to a party, to DJ a

10  party in Riverside.

11     **ATTORNEY TARDIFF**:  And Mr. Smith was going to

12  that same party?

13     **INMATE CORDOBA**:  Yes, ma'am.

14     **ATTORNEY TARDIFF**:  So when he gave you the gun

15  why did you, I don't understand why you would be so

16  willing to shoot a gun?

17     **INMATE CORDOBA**:  He said, he said (inaudible)

18  out of fear I gave it a shot.

19     **ATTORNEY TARDIFF**:  Fear of who?

20     **INMATE CORDOBA**:  Fear of him, the gang member.

21     **ATTORNEY TARDIFF**:  You thought you would be

22  shot at, he told you that you would be shot at?

23     **INMATE CORDOBA**:  Yes, ma'am.

24     **ATTORNEY TARDIFF**:  Okay, so you did it to

25  prevent yourself from being shot?

26     **INMATE CORDOBA**:  Yes, ma'am.

27     **ATTORNEY TARDIFF**:  (inaudible)

40

1    **PRESIDING COMMISSIONER HARRIS-RITTER:**  Closing
2    statements?

3    **DEPUTY DISTRICT ATTORNEY MONTAGMA:**  I really
4    don't have much to say.  I think his explanation of the
5    crime leaves a lot to be desired.  Whether or not he
6    was actually a gang member, he clear was associating
7    with the Crips, for the record, we oppose parole at
8    this time.  Thank you.

9    **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank
10   you.  Miss Tardiff?

11   **ATTORNEY TARDIFF:**  Thank you.  In terms of Mr.
12   Cordoba's pre-incarceration history, he did come from a
13   stable family, a close family.  The probation officer's
14   report indicates he had a steady employment history.
15   He had no prior criminal history, as a juvenile or
16   adult, this was a first offense, first conviction.  His
17   story, his version of the commitment offense has always
18   been the same.  You go back and look, even in the
19   probation officer's report -- and I have found that
20   when someone, when an inmate's not being truthful about
21   his commitment offense the story usually does not stay
22   the same, but in this case it has.  And indeed it may
23   sound foolish or something, but it's never, it's never
24   changed.  So I think that in terms of truthfulness,
25   he's telling the truth.  This gang activity thing has
26   always been an issue and I'm not sure if this even
27   needs to keep being gone into, the fact is in the

41

1    probation officer's report they couldn't verify he was
2    a member of a gang.  Let's see -- The problem is, you
3    know, when you live down in that area and you go to
4    school with those guys, it's inevitable that you're
5    going to be hanging out with them at some point, but in
6    any event, I can't find it now -- but the probation
7    officer's report says although defendant denies any
8    gang membership, he states he lives in the area of the
9    (inaudible) Crips.  It couldn't be verified that he was
10   a member of a gang.  The, which one was it, the psych
11   eval from '04, it was an addendum to deal with one
12   issue only, and that is address the gang affiliation
13   issue.  And in that report it states that, okay, on one
14   hand, there's a, it does get confusing, and I think the
15   confusion comes from page 4 of the '02 psych points
16   out, or states, regarding the question about gang
17   involvement Inmate Cordoba states "I have never been
18   involved in gangs before, that was the first time I'd
19   used a gun."  In the July 29th, '99 report it states "on
20   one hand he was associated with the Crips." The next
21   paragraph it states although "though he may not have
22   been a member of the Crips gang he obviously did know
23   them."  He has no apparent criminal history, no
24   apparent juvenile criminal history.  Due to several
25   factors it's concluded that, this is a conclusion,
26   concluding no substantiation of any gang activity other
27   than what appears to be written in previous psych

42

1    reports.  So, they conclude that there is no gang
2    involvement.  Since he's been incarcerated he's
3    educationally upgraded himself, with a GED, two
4    vocations.  He has participated in self-help for many
5    years, more recently anger management and another anger
6    management course.  He's continued to work in a steady
7    fashion.  His psych evals from '96 have been positive.
8    The most recent one, the '06, states that there's no
9    indication of gang membership, doing well, no gang
10   involvement in CDC, there's no substance abuse history.
11   His remorse and sorrow appear genuine.  The crime was
12   related to immaturity, poor judgment and peer pressure.
13   He has zero violent history, both in and out of CDC,
14   and note that the prior two evaluations states the
15   inmate poses no risk of danger.  He's been involved in
16   no violence (inaudible), possession of weapons or
17   aggressive behavior.  The testing procedure, level of
18   service inventory revised, gave him a 1.4, which is
19   extremely low risk.  And due to his life experiences,
20   his risk is the same of the average citizen.  It
21   concluded that there was no mental, emotional
22   disorders, strong family support, acquired vocational
23   skills, job offers, the trades he's learned are in high
24   demand.  He has dual parole plans.  His prognosis is
25   excellent for successful adjustment in the community.
26   The '04 doesn't really reach a conclusion.  The 1/31/03
27   is positive.  He demonstrates good judgment, impulse

43

1   control, expressed genuine remorse.  This went into the
2   gang involvement on page 4.  It states Inmate Cordoba's
3   statement that I've never been involved in gangs.  It
4   concludes, in light of his statements it would appear
5   he has never been properly implicated or trained by a
6   responsible, law-abiding adult in the use of firearms.
7    And thus did not fully understand the impact of his
8   behavior and the resultant consequences.  He showed
9   insight and empathy, and his potential, his risk
10  potential is no more than the average citizen in the
11  community.  And in '99, his current level of insight
12  and judgment supports a positive prediction of
13  successful adaptation to community living, no more than
14  the average citizen.  In '96 it was the same.  So, for
15  10 years he's had good psych evals.  He's got good
16  parole plans, and I will submit on that, thank you.
17          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank
18  you.  Mr. Cordoba, do you have a statement you'd like
19  to make?
20          **INMATE CORDOBA:**  Yes, there is, I have a
21  letter, I wrote this down.  Dear Commissioner, it is
22  with deep and sincere remorse and regret that I accept
23  full and complete responsibility for the crime of
24  murder, committed against Mr. Marvin McIntosh, and his
25  family.  The crime of murder was committed by me during
26  a drive-by shooting in which I was the responsible
27  person (inaudible) laws of God and the laws of this

44

1    society (inaudible).  My actions were wrong and with my

2    heart and soul I pray daily for forgiveness.  Over the

3    years of this imprisonment I've made an honest effort

4    to make amends for the negative behavior that has

5    characterized my life in the past, and in order to

6    improve my conscious contact with (inaudible) I've

7    relied on daily prayers and meditation of God

8    (inaudible).  Fortunately, the California Department of

9    Correction has made this process of improvement

10   possible through the self-help programs and I have

11   taken (inaudible) program.  It has been essential for

12   my life to have the strong support from family and

13   friends, my parents, (inaudible) Cordoba have provided

14   a strong (inaudible) foundation for my life.  It is a

15   strong belief in the Lord.  We have maintained a

16   healing fellowship.  Every human life is precious in

17   the sight of the Lord.  And this understanding God

18   (inaudible) all life is in (inaudible) the holy God and

19   every soul is connected in life, each one is a member

20   of the human family.  To emphasize (inaudible) life of

21   Marvin McIntosh, which I am guilty of taking away and

22   shall remain in remorse, with prayers for his soul and

23   forgiveness on earth as it is in heaven.  To you, as

24   the board of prison terms, and as commissioner of the

25   board, I submit this letter of responsibility, in

26   humble respect (inaudible) I do pray that the Lord

27   shall be with you in the work that you are doing on

45

1    behalf of this great state.  Thank you very much.

2          **PRESIDING COMMISSIONER HARRIS-RITTER:**    Thank

3    you Mr. Cordoba.  It is now 22 minutes before 6:00 p.m.

4     We will recess to deliberate.

5

6

7                        R E C E S S

8                         --o0o--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

46

1      **CALIFORNIA BOARD OF PAROLE HEARINGS**

2                  **D E C I S I O N**

3          **DEPUTY COMMISSIONER ESTRADA:**  We're on.

4          **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

5      you.  We're back on the record.  All parties previously

6      noted as present are present, and the time is 6:00 p.m.

7       In the matter of Inmate Rogelio Cordoba, the panel has

8      reached the following decision.  Mr. Cordoba, the panel

9      reviewed all the information received from the public

10     and relied on the following circumstances in concluding

11     that the prisoner is not suitable for parole and would

12     pose an unreasonable risk of danger to society or a

13     threat to public safety if released from prison.  This

14     is a one-year denial.  It is based on the commitment

15     offense.  The offense was carried out in an especially

16     callous manner.  The offense was carried out in a

17     dispassionate and calculated manner.  The offense was

18     carried out in a manner which demonstrates an

19     exceptionally callous disregard for human suffering.

20     The motive for the crime was very trivial in relation

21     to the offense.  These conclusions are drawn from the

22     statement of facts in the appellate opinion at page 4-

23     6, and I quote:

24             "On January 30th, 1985, at about 3:00

25             p.m. (inaudible) Harris was walking with

26             four friends in the area on 46th Street

27     **ROGELIO CORDOBA D-22031  DECISION PAGE 1  9/12/06**

47

1    and Crenshaw in Los Angeles.  Defendant

2    Rodney Tommy Smith came around a corner,

3    approached the group, and said 'now

4    what's up', and then started shooting.

5    Defendant Smith, known on the street as

6    Snowman, fired four shots and a bullet

7    struck Harris just above the ankle.

8    Harris received medical attention for

9    this injury.  The bullet passed in and

10   out of Harris's ankle and leg and he has

11   scars as a result.  The next day, on

12   February 1st, 1985, before 3:00 and 4:00

13   p.m., Roy Rubin, Andre West, and Maurice

14   McIntosh were at the intersection of 9th

15   Avenue and 48th Street in Los Angeles.

16   Defendant Smith drove up to that

17   location in a beige automobile.  There

18   were a number of passengers in the

19   vehicle, including some girls.

20   Defendant Smith fired a shot towards Roy

21   Rubin and Andre West, but did not hit

22   either of them, and drove away.  The

23   following day, on February 2nd, 1985,

24   Ronnie Luke saw Defendant Smith and

25   Defendant Cordoba together.  He saw them

26   depart in Defendant Smith's automobile.

27   **ROGELIO CORDOBA D-22031   DECISION PAGE 2   9/12/06**

48

1    At about 7:00 p.m. Roy Rubin and Marvin

2    McIntosh were standing on the sidewalk

3    in front of the residence at 4817 South

4    9th Street, Los Angeles, waiting for a

5    friend.  Rubin observed a beige

6    automobile coming down the street.  The

7    car slowed down, the lights were turned

8    off, the car continued proceeding

9    towards Rubin and McIntosh and passed

10   them.  Rubin and McIntosh, having seen

11   the car approaching with the lights off,

12   thought the situation suspicious and

13   took refuge behind two cars parked in

14   the driveway at 4817.  The car passed

15   4817 and continued to the front of the

16   property next door, where it stopped.

17   Two shots were fired from the car.

18   McIntosh was struck in the head by a

19   bullet, fell to the ground, and died

20   from the wound.  Rubin heard someone

21   inside the car say 'cuz', C-U-Z, and the

22   car sped from the scene.  There was

23   testimony that the word cuz was one that

24   would likely be used by some gang member

25   who was (inaudible) the Blood gang

26   member.  Ronnie Luke saw Defendant

27   **ROGELIO CORDOBA D-22031  DECISION PAGE 3  9/12/06**

49

1                Smith later on the evening of February

2                2nd, 1985.  Smith told Luke that he and

3                Defendant Cordoba had gone riding

4                through the Fifties hood.  The Fifties

5                is a gang associated with the Bloods,

6                also a gang.  The hood refers to a

7                neighborhood, in the area where the

8                members of a particular gang live or

9                gather, the Fifties hood therefore is a

10              neighborhood where Fifties live or

11              gather.  Smith told Luke he and Cordoba

12              had blasted some Fifties."

13  The prisoner has an escalating pattern of criminal

14  conduct.  The prisoner has only, has six 128As, the

15  last of which was in 1995, related to the count and

16  only two 115s, the last was 18 years ago, for theft of

17  state food.  In the psychological report dated May 5th,

18  2006, and authored by Dr. Macomber, is inclusive to

19  this panel in that it at page 3 Dr. Macomber reports

20  that the inmate said he accidentally shot the victim

21  and Mr. Cordoba states he did not say it was

22  accidental.  We believe that this needs to be clarified

23  in another evaluation.  The parole plans are excellent

24  parole plans except we need to have clarification as to

25  whether there is an INS hold from Panama.  We talked to

26  you a little bit about that, I think you could talk to

27  **ROGELIO CORDOBA D-22031  DECISION PAGE 4  9/12/06**

1   your counselor and get that cleared up one way or the
2   other, just for your own benefit, but that'll need to
3   be done before -- I would recommend that you do that
4   before the next panel.  Because then that can be
5   answered unequivocally.  The hearing panel notes the
6   responses to PT3042 notices indicate opposition to a
7   finding of parole suitability, specifically the
8   district attorney for Los Angeles County.  The panel
9   makes the following findings:  The prisoner needs to
10  better articulate his participation in the commitment
11  offense and his relationship to the others involved.
12  Nevertheless the prisoner should be commended for
13  receiving his GED in 1997, vocational welding being
14  completed in 1992, receiving his welding license, his
15  vocational training technology certificate in 2004, and
16  18 years since the last 115 and 11 years since the last
17  128A.  However, these positive aspects of his behavior
18  do not outweigh the fact of his unsuitability at this
19  particular time.  Mr. Cordoba, the panel really is torn
20  in this, but we believe you need more insight into why
21  you were associating with known gang members in a way
22  that resulted in you committing a murder.  We have
23  trouble with that.  And it's true your counsel says you
24  haven't changed your story over the years, but there
25  are different shadings that are put into your story,
26  not necessarily by you.
27  **ROGELIO CORDOBA D-22031  DECISION PAGE 5  9/12/06**

51

1    We weren't comfortable with the way the situation is
2    right now, as far as the explanations.  We needed more
3    than that and when you get a decision from a panel it
4    will be a tentative decision.  It will have to go
5    through decision review and the governor's office.  And
6    what happened and why you were there with those people
7    will have to be articulated clearly enough for it not
8    to just be the panel granting it tentatively, but also
9    it going through decision review and the governor's
10   office.  And so your plans are excellent for wherever
11   you will go, whether it's California or Panama, you
12   know, you'll just need to update those, but the INS
13   hold question should be answered and we do think some
14   insight into -- they were known gang members to you,
15   and getting, in that kind of a situation, you've got to
16   think about how you put yourself in that place.  We're
17   asking for a new psych report because we want to
18   clarify the problem with the way the last one was
19   written regarding the word accidentally, we don't think
20   that's fair to you to have that sitting like that, from
21   your testimony to us.  So we've requested this report,
22   based on the panel's belief that the prisoner's current
23   mental health is an important issue. And in a new full
24    evaluation the panel requests that the clinician
25   specifically address the following and we request that
26   it be the extent to which the prisoner has explored
27   **ROGELIO CORDOBA D-22031  DECISION PAGE 6  9/12/06** the

52

1    commitment offense and come to terms with the

2    underlying causes.  And a review of Dr. Macomber's

3    report regarding the commitment offense and clarify the

4    inmate's description of what actually occurred.  That

5    concludes the reading of the decision.  Commissioner

6    Estrada, if you have anything you'd like to add?

7         **DEPUTY COMMISSIONER ESTRADA:**  Good luck to you

8    Mr. Cordoba.

9         **PRESIDING COMMISSIONER HARRIS-RITTER:**  Thank

10   you.  That concludes the hearing, it is now 6:06 p.m.

11

12

13

14              **A D J O U R N M E N T**

15                  --oOo--

16

17

18

19

20

21

22

23   **PAROLE DENIED ONE YEAR**

                              JAN 1 0 2007

24   **THIS DECISION WILL BE FINAL ON:**_____

25   **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **ROGELIO CORDOBA D-22031  DECISION PAGE 7  9/12/06**

53

## CERTIFICATE AND DECLARATION

## OF TRANSCRIBER

I, SHELLEY KELBER, a duly designated transcriber, NORTHERN CALIFORNIA COURT REPORTERS, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 52, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of ROGELIO CORDOBA, CDC Number D-22031, on September 12, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.  Dated NOVEMBER 25, 2006 at Sacramento, California.

Shelley Kelber, Transcriber

**Northern California Court Reporters**

# EXHIBIT B
# (PSYCH EVALUATION)

**MENTAL HEALTH EVALUATION FOR**
**THE BOARD OF PRISON HEARINGS**
June, 2006 Lifer Calendar

**CORRECTIONAL TRAINING FACILITY SOLEDAD**
**MAY, 2006**

| | |
|---|---|
| **NAME:** | **CORDOBA, ROGELIO** |
| **CDC#:** | **D-22031** |
| **DOB:** | **10/9/64** |
| **OFFENSE:** | **PC 187 MURDER, SECOND DEGREE** |
| **DATE OF OFFENSE:** | **2/2/85** |
| **SENTENCE:** | **17 YEARS TO LIFE** |
| **MEPD:** | **8/26/95** |
| **EVALUATION DATE:** | **5/5/06** |

**I.**    **IDENTIFYING INFORMATION:**

Mr. Cordoba is a single, first term, 41 year old male, who was born in Panama. He was sentenced by Los Angeles County. He is a Muslim. He has served 21 years in custody. He does have a US-INS hold from Panama.

**SOURCES OF INFORMATION:**

This evaluation is based upon a single one hour interview, plus review of the central and medical files.

This is the third psychological evaluation prepared for the Board of Prison Hearings, since the initial evaluation was done at CTF-Soledad, on 1/31/02, by Dr. Steward, Clinical Psychologist. His evaluation contains a Psychosocial Assessment that was reviewed with the inmate. This information is still current and valid and will not be repeated at this time.

CORDOBA, ROGELIO
D-22031
5/5/06
PAGE 2


## CLINICAL ASSESSMENT

**XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS**

Mr. Cordoba related during the interview in a serious, sober, open and cooperative manner. His mental status was within normal limits. He was alert and well oriented. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. His affect was appropriate. There was no evidence of anxiety or of depression. His eye contact was good. Intellectually, he was functioning in the average ranges. His memory was intact. His judgment was intact. His insight and self-awareness were very good.

Mr. Cordoba stated that he has not ever been an official gang member. He knew gang members in Los Angeles, because he went to school with them, and he played basketball with them. In fact, the victims were people with whom he played basketball. There is no indication in the written record that he has ever been a gang member. The Probation Report noted that he lived in the area of the Crips Gang, but he was not a gang member. He comes from a stable, non-criminal family. He is the only one in his family who has ever been in trouble. Previous Psychological Evaluations also document his statements indicating that he is not a gang member and has never been a gang member, and that he simply lived in an area where he knew some gang members.

Mr. Cordoba has been doing very well in the institutional environment. He has been disciplinary free for 18 years. In the institution he has never been involved in any gang activities, although we do have frequent racial, gang related riots at this prison. He also has no history of drug or of alcohol use. However, he voluntarily attended Alcoholics Anonymous and Narcotics Anonymous, simply because he thought that he could benefit from them as a self-help group. Since he does not need to attend, the sponsors have asked him not to continue to attend, due to the need of having other inmates in the program. He also has completed Alternatives to Violence, Values and Morals, Breaking Barriers Program, Anger Management, and several video tapes. In addition, he is certified in Vocational Printing and Vocational Welding.


## CURRENT DIAGNOSTIC IMPRESSION

| | |
|---|---|
| Axis I: | No mental disorder |
| Axis II: | No personality disorder |
| Axis III: | No physical disorder |
| Axis IV: | Life term incarceration |
| Axis V: | Current GAF: 85 |

CORDOBA, ROGELIO
D-22031
5/5/06
PAGE 3

## XIII.  REVIEW OF LIFE CRIME

Mr. Cordoba accepts the official version of this offense. He accepts full responsibility for his actions in the commitment offense, which resulted in the death of the victim. He feels very badly about this offense. Someone was accidentally killed as a result of his actions. He stated that he did not know anything about guns, and he had never shot one before. When his crime partner yelled at him and gave him the gun and ordered him to shoot, he did. It was dark, and he did not aim it at anyone. However, he accidentally shot the 19 year old victim. These were individuals with whom he had played basketball. He had no animosity or hatred towards them at all.

His feelings of sorrow and remorse at the loss of life, due to his actions, appear to be sincere and genuine. This offense appears to be related to inmate Cordoba's immaturity, use of poor judgment, and impulsive behavior, and to the peer pressure of being yelled at and told to shoot under the guise that they were shooting at him. This offense is very situational. Mr. Cordoba does not have a history of violence, and he has never been aggressive or violent in the institution during his 21 years of incarceration.

## XIV.  ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, this man has been seen since 2002 by two additional psychologists. This is his third examination by a licensed psychologist to assess dangerousness. They all agree that he does not pose a risk to the institution or to society at this point in his life. He has never been involved in racial riots (although we have several of them), assaults on others, possession of weapons, or other aggressive behavior. Compared to other inmates, violence potential is definitely below average.

B. In considering potential for dangerous behavior when released to the community, I agree with the prior three psychologists that stated that he poses no more risk to society than the average citizen in the community. This is supported by the administration of the Level of Service Inventory-Revised, which is an actuarial measure that assesses criminal history, substance abuse history, vocational achievement, social relationships and other factors to determine current risk level on parole. His score places him at the 1.4 cumulative frequency for prison inmates. This means that if 100 men were released on parole, he would do better on parole than 98 of

CORDOBA, ROGELIO
D-22031
5/5/06
PAGE 4

them. This is a very low risk level. He does not pose any more risk to society than the average citizen. In fact, due to his life experiences, he probably poses less risk to the community than the average citizen.

C. This man has no history of drug or alcohol abuse, or of gang membership. There are no significant risk factors in this case.

## XV.    CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with routine parole planning. He has strong family support in the community. He has acquired vocational skills, and he is certified in Vocational Welding, as well as in Vocational Print Shop and Graphic Design. He has several job offers in the community. He also has a job offer from his brother in Los Angeles, who owns a print shop. Also, his skills as a welder could result in instant employment in the community. This is a trade that is in high demand and pays very well. Employment will not be a problem in this case. He does have a US-INS hold from Panama. His family is now legal, naturalized citizens. He was arrested before he was able to go through that process. However, he does have residence available in Panama, as well as a job offers there from family members, who live there. The prognosis for successful adjustment in the community in this case is excellent.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

D:    5/5/06
T:    5/6/06

Cordoba            D-22031            CTF-Soledad            5/5/06

# EXHIBIT C
# (COUNSELOR'S REPORT)

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
NOVEMBER 2005 CALENDAR

CORDOBA, ROGELIO                                              D22031

I.   **COMMITMENT FACTORS:**

    A.   **Life Crime:** Count 1, Murder with a Firearm (187 PC). Received in CDC 10/31/85 from Los Angeles County, Case Number A762389. Victim: Marvin James McIntosh, deceased -- instant offense. Age 19 at time of death.

        1.   **Summary of Crime:** All relevant documents from the previous hearings have been considered and that information remains valid.

        2.   **Prisoner's Version:** In an interview for this report, Cordoba stated that his version remains the same as that presented in the previous report.

        3.   **Aggravating/Mitigating Circumstances:**

            a.   **Aggravating Factors:**

                1. During the commission of the crime the prisoner had a clear opportunity to cease but instead continued.
                2. The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime.

            b.   **Mitigating Factors:** None.

    B.   **Multiple Crime(s):** None.

        1.   **Summary of Crime:** None.

        2.   **Prisoner's Version:** None.

II.  **PRECONVICTION FACTORS:**

    A.   **Juvenile Record:** Documents from the previous hearings have been considered and that information appears valid. This writer has no further information to add.

COPY TO INMATE ON 9-23-05

LIFE PRISONER EVALUAT    REPORT                                           2
PAROLE CONSIDERATION    ARING
NOVEMBER 2005 CALENDAR

B.    **Adult Convictions and Arrests:**  Documents from the previous hearings have
        been considered, and that information appears valid.  This writer has no further
        information to add.

C.    **Personal Factors:**  Documents from the previous hearings have been considered,
        and that information appears valid.  The writer has no further information to add.


III.    **POSTCONVICTION FACTORS:**

A.    **Special Programming/Accommodations:**  None.

B.    **Custody History:**  Cordoba was received into the California Department of
        Corrections on January 17, 1986.  Cordova has remained housed at the
        Correctional Training Facility since February 9, 1993 established at Medium A.

C.    **Therapy and Self-Help Activities:**  Cordova successfully received certification
        of completion in Printing Technology (Offset Printing Program) during this
        period.  Cordoba has been unassigned since September 2004 and is currently on
        the waiting list for a new assignment.  There are no documents referencing to any
        activity in academics or self help programs during this period.

D.    **Disciplinary History:**  Cordoba overall pattern of behavior since his last
        Subsequent Hearing is considered exceptional.

        CDC 115s

| Date | Location | Rule# | Disposition |
|------|----------|-------|-------------|
| 06/23/88 | CCI | 3005(a) | Guilty:  Theft of State Food, 20 hours extra duties. |
| 11/19/87 | CCI | 3053 | Guilty:  Threatening Staff; 30 days loss of credits for Div. F Offense, 60 days LOP, suspended 90 days clean conduct and 40 hours extra duty. |

        CDC 128A

| Date | Location | Counseling offense |
|------|----------|--------------------|
| 12/27/95 | CTF | Counseled on his responsibility for count. |

LIFE PRISONER EVALUATI   REPORT                                                    3
PAROLE CONSIDERATION  ..EARING
NOVEMBER 2005 CALENDAR

| | | | |
|---|---|---|---|
| 12/18/94 | CTF | | Counseled on his flagging. |
| 09/04/90 | RJD | | Counseled on his being absent from his assignment. |
| 03/12/88 | CCI | | Counseled on inappropriate cell vent covered. |
| 04/14/88 | CIM | | Counseled on his being disrespectful to staff. |
| 03/04/87 | CIM | | Counseled for his being out of bounds. |

E.    **Other:**  The panel for Cordoba's last Subsequent Parole Consideration Hearing on 11/1/04 acted to deny parole consideration for one year, get self help, stay disciplinary free, earn positive chrono and get a GED.

## IV.    FUTURE PLANS:

A.    **Residence:**  Residence plans remain the same as those presented for his last hearing.

B.    **Employment:**  Employment plans remain the same as those presented for his last hearing.

C.    **Assessment:**  Cordoba's residence and employment plans appear realistic and appropriate.

## V.    USINS STATUS:  Not applicable.

## VI.    SUMMARY:

A.    Prior to release the prisoner could benefit from:

1.    Maintaining a disciplinary free record.
2.    Participate in self help when available.
3.    Participate in work program or college correspondence courses,

B.    This report is based upon (1/2) hour interview with Cordoba, incidental contact in the housing unit, and a thorough review of his Central File.

CORDOBA, ROGELIO              D22031                    CTF-SOLEDAD              **NOV/2005**

LIFE PRISONER EVALUAT    REPORT
PAROLE CONSIDERATION    _ARING
NOVEMBER 2005 CALENDAR

4

C.   Cordoba was afforded an opportunity to examine his Central File, however declined to do so.

D.   No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUAT    REPORT                                    5
PAROLE CONSIDERATION    _ARING
NOVEMBER 2005 CALENDAR


_L.R. Baker_ CCI  9-20-05
L.R. Baker                        Date
Correctional Counselor I


_J.L. Sareli_          9-70-5
J.L. Sareli                       Date
Correctional Counselor II


_J.L. Clancy_          9-70-5
J.L. Clancy                       Date
Facility Captain


_Levorse,_ C&PR  9-23-05
D. S. Levorse                     Date
Classification and Parole Representative

BOARD OF PRISON TERMS                                                              STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐   DOCUMENTATION HEARING

☒   PAROLE CONSIDERATION HEARING                          **ADDENDUM**

☐   PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2  MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 8/05 to 8/06 (Present) | | | **PLACEMENT:**  Remained at CTF-Soledad, housed in the general population. **CUSTODY:**  Medium A. **VOC. TRAINING:**  None noted during this report period. **ACADEMICS:**  None noted during this report period. **WORK RECORD:**  Recreational Worker as of 10/4/05, no CDC 101's during this reporting period. **GROUP ACTIVITIES:**  None noted during this report period. **PSYCH. TREATMENT:**  None noted. **PRISON BEHAVIOR:**  Cordoba has remained disciplinary free during this report period. **OTHER:**  None noted. |

*Inmate Copy*

| CORRECTIONAL COUNSELOR'S SIGNATURE | DATE 8/24/06 |
|---|---|
| CORDOBA             D22031             CTF-SOLEDAD | |

Sent to Inmate on   8/31/06

BPT 1004 (REV 7/86)

LIFF PRISONER: POSTCONVICTION PROGRESS REPORT                **ADDENDUM**


_____    _8/24/06_____
P.L. Baltazar                                        Date
Correctional Counselor I


_____    _8/25/06_____
S. Martin                                           Date
Correctional Counselor II


_____    _8/28/06_____
E.A. DaRosa                                         Date
Facility Captain (A)


___Levorse, CPR 8/25-06_____
D.S. Levorse                                        Date
Classification and Parole Representative


CORDOBA                    D22031                    CTF-SOLEDAD

BOARD OF PRISON TERMS                                                      STATE OF CALIFORNIA

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- ☐ DOCUMENTATION HEARING
- ☒ PAROLE CONSIDERATION HEARING
- ☐ PROGRESS HEARING

INSTRUCTIONS
  TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
  TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
      ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 09/04 to 01/05 | | | **PLACEMENT**: Remained at the Correctional Training Facility (CTF) during this period. **CUSTODY**: Retain Medium A custody, during this period. **VOC. TRAINING**: Cordoba is currently unassigned as a result of completion of vocational print shop. He is currently on a work waiting list. **ACADEMICS**: None noted during this period. **WORK RECORD**: Refer to Vocation. **GROUP ACTIVITIES**: Cordoba successfully completed a series of lectures: "How to become a Father and not get Angry:" sponsored by CTF's Muslim Development Center, as documented on CDC 128B dated 1/5/05. **PSYCH. TREATMENT**: None noted during this period. **PRISON BEHAVIOR**: Disciplinary free during this period. **OTHER**: N/A. |

CORRECTIONAL COUNSELOR'S SIGNATURE

*L. R. Baker, CC1*

DATE  9- 14- 05

CORDOBA          D22031          CTF-SOLEDAD          NOV/2005

BOARD OF PRISON TERMS                                                                                                          STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1/05 to 8/05 (Present) | | | **PLACEMENT:**  Remained at CTF.<br>**CUSTODY:**  Retain Medium A.<br>**VOC. TRAINING:**  None noted during this period.<br>**ACADEMICS:**  None noted during this period.<br>**WORK RECORD:**  Unassigned<br>**GROUP ACTIVITIES:**  None noted during this period.<br>**PSYCH. TREATMENT:**  None noted during this period.<br>**PRISON BEHAVIOR:**  Disciplinarty free during this period.<br>**OTHER:** |

ORDER:
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed  conditions affirmed.
- ☐ Add or modify

- ☐ Schedule for Progress Hearing on appropriate institutional calendar

CORDOVA                       D22031                    CTF-SOLEDAD                    NOV/2005

BOARD OF PRISON TERMS                                                                                                          STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                                                        Page _2_

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐   DOCUMENTATION HEARING

☒   PAROLE CONSIDERATION HEARING                                    **ADDENDUM**

☐   PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
         ESTABLISHED, ie., 0-2  MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 10/03 to 9/04 (Present) | | | **PLACEMENT:**  Remained at the Correctional Training Facility (CTF) during this period. **CUSTODY:**  Retained Medium A Custody during this period. **VOC. TRAINING:**  Cordoba received a Certificate of Completion in Printing Technologies dated 2/5/04.  It is also requested that Cordoba be unassigned from the Offset Printing Program due to completion dated 9/30/04. **ACADEMICS:**  None noted during this period. **WORK RECORD:**  Refer to Vocation. **GROUP ACTIVITIES:**  None noted during this period. **PSYCH. TREATMENT:**  None noted during this period. **PRISON BEHAVIOR:**  Disciplinary free during this period. **OTHER:**  This report is based upon a 1/2 hour interview, a thorough review of the Central File and incidental contact in the housing unit.  Cordoba reviewed his Central File on 10/14/04 in preparation for his upcoming Board Hearing. |

CORRECTIONAL COUNSELOR'S SIGNATURE                                          DATE
*L.R. Baker*                                                                              10 - 19 - 04

CORDOBA                    D22031                    CTF-SOLEDAD

BPT 1004 (REV 7/86)

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    **ADDENDUM**


_L.R. Baker_ CCI          10-19-04
L.R. Baker                     Date
Correctional Counselor I


_____          10-19-4
A.M. Padilla                   Date
Correctional Counselor II


_____          10/20/D4
J. L. Clancy                   Date
Facility Captain


_____ C&PR     10/20/04
D.S. Levorse                   Date
Classification and Parole Representative


CORDOBA                    D22031                    CTF-SOLEDAD

BPT 1004 (REV 7/86)

COPY TO INMATE ON
3.16.04

# LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING
### FEBRUARY 2004 CALENDAR

**CORDOBA, ROGELIO**                                    D22031

## I.    COMMITMENT FACTORS:

A.    **Life Crime:** Murder 2nd, 15 years to Life plus two years for 12022.5 PC. Received in CDC on 10/31/85 from Los Angeles County, Case #A762389, Count 1, Murder with Firearm (187 PC). MEPD: 11/12/95, Victim: Marvin James Macintosh, age 19.

1.    **Summary of Crime:** On February 2, 1985 at about 7:00 PM, Marvin James Macintosh (the victim) was standing in front of 4827 South Ninth Avenue with Willie Allen Rubin. A 1976 Oldsmobile Cutlass belonging to Rodney Smith drove past the above address. Smith was driving with Cordoba, the only other occupant in the car. As the car passed the residence, one shot was fired from the car. The round struck Macintosh in the head and he died at the scene. After the shooting, the vehicle sped away.

An investigation disclosed that this drive by shooting was gang related. Cordoba is associated with the "Crips Gang" and the deceased was associated with the rival gang "Rolling 50's Bloods". Following the murder, Smith known as "Snowman" on the streets, told associates that he was driving with "Loco Dee" Cordoba who had shot the deceased with a .22 caliber firearm. Smith was arrested on February 3, 1985. Cordoba, was arrested at Crenshaw High School in the gymnasium on February 5, 1985.

2.    **Prisoner's Version:** Cordoba was interviewed 10/24/03 in regards to his version of the above offense. Cordoba read the POR and agreed that the report was accurate and had nothing to add. The report stated that after Cordoba was arrested and advised of his rights, he made a statement that he and "Snowman" (crime partner) went to McDonalds on Florence Avenue and were driving up Ninth Avenue when Snowman stopped and the car and said "There they go" (referring to the "50's Bloods" who were standing on the lawn). Cordoba stated that the 50's Blood member shot at them. Smith reached into the rear seat area of the car, got a gun, and

handed it to Cordoba. "Snowman" said, "Bust on them niggers, don't be a Mark." Cordoba said that Smith stopped the car and he (Cordoba) reached out the passenger window and pointed the gun back at the boys on the lawn and shot once. After Cordoba shot at them, they drove away and met with some friends and went to a party in San Bernardino. He then returned the gun to Smith who put it back under the seat. He stated that he never saw the gun again.

3.    **Aggravating/Mitigating Circumstances:**

    a.    **Aggravating Factors:**

        1.    The crime resulted in a death of a human being, disclosing a high degree of cruelty, viciousness, and callousness.
        2.    Cordoba was armed and used a weapon at the time of the commission of the crime.
        3.    The planning with which the crime was carried out indicates premeditation.

    b.    **Mitigating Factors:** Cordoba has no known previous felony convictions.

**B.**    **Multiple Crime(s):** None.

    a.    **Summary of Crime:** None.

    b.    **Prisoner's Version:** None.

## II.    PRECONVICTION FACTORS:

**A.**    **Juvenile Record:** LAPD 211 PC (Robbery) 2/17/83; Released, complaint refused prosecution.

**B.**    **Adult Convictions and Arrests:** LAPD 623.8 (A) PC Person/Sex Offender Disrupt School, no disposition.

**C.**    **Personal Factors:** Cordoba who is one of three boys was born in St. Thomas, Virgin Islands. He was brought to the United States when he was nine years old. His parents were born in the Virgin Islands. He claims that he became a U.S. citizen in 1977. His family established residence in California and he lived with his mother prior to his arrest in a home rented by her. His parents separated in 1984. His father lives at an unknown address in Compton, California and is a

bartender. His mother works in factory making ties. Cordoba stated that no member of his family has an arrest history. He also states that he previously had a CETA job working as a Junior Lifeguard at a Boy's Club. He denies the use of all narcotics as well as intoxicants.

## III.    POSTCONVICTION FACTORS:

**A.**    **Special Programming /Accommodations:** None.

**B.**    **Custody History:** Cordoba remains at CTF-Central with the general population. He remains Medium A custody. He is currently assigned to Vocational Print Shop since 7/2/02.

**C.**    **Therapy and Self-Help Activities:** None subject states he has taken them all.

**D.**    **Disciplinary History:** Cordoba has remained disciplinary free during this period of review.

**E.**    **Other:** Prior panel recommendations denied parole 1 year. Remain disciplinary free, participate in self-help and therapy. It appears he has been working hard to achieve the panel recommendations.

## IV.    FUTURE PLANS:

**A.**    **Residence:** Cordoba plans to live with his mother, Edilka Cordoba at 3941 S. Arlington Avenue, Los Angeles, CA 90008; (323) 295-0862.

**B.**    **Employment:** Cordoba plans to obtain a job in the welding industry. Cordoba says that his family and friends are willing to help him get started and assist in his job search. His brother Rodolfo Cordoba is a graphic designer and has offered him a job.

**C.**    **Assessment:** Subject can go back and live with his family which is to his benefit. Also he is working on a vocational trade in printing.

## V.    USINS STATUS: Cordoba was born in the Virgin Islands and is a U.S. citizen.

## VI.    SUMMARY:

CORDBOA, ROGELIO        D-22031            CTF-SOLEDAD        FEB/2004

A.    Considering the commitment offense, prior record and prison adjustment, this writer believes the prisoner would pose a low degree to the public, if released from prison. Cordoba committed his crime when he was 21 years old, he has matured since than. He has also programmed well during his incarceration. He has a minor criminal history.

B.    Prior to release, the prisoner could benefit from:

1.    Maintaining a disciplinary free record.
2.    Participating in work or school assignment.
3.    Participate in self-help program when available.

C.    This Board Report is based upon two hours of interview, incidental contact in housing unit and a review of the Central File. Cordoba was given the opportunity to review his Central File on 10/24/03.

D.    No accommodation for the purpose of effective communication was required per the Armstrong Remedial Plan (ARP).



# EXHIBIT D
# (LETTERS OF SUPPORT)

**Letter of Support**

To: State of California
Board of Prison Terms
1515 K Street, #600
Sacramento, CA 95814-4053

Inmate:
Mr. Rogelio Cordoba (D22031)
C-336 UP
P.O. Box 689
Soledad, CA 93960-0689

To the Board of Prison Terms:
This is to inform you of my support of the inmate mentioned above. This letter is for support in aiding him and for consideration of his release from prison.
I would like to help in giving him another opportunity to be a productive citizen.
Hopefully by giving him a job. Moreover, we will assist him financially in any small way, while he's on the road to starting over.
Our prayer is that you give our consideration for his release and an opportunity for the inmate to return back to society and the job that the State Prison has done, in rehabilitating him, has been successful.

Thank you

PAY TO THE ORDER OF
BANK OF AMERICA
LOS ANGELES, CA  90062
▶ 122000861 ◀
FOR DEPOSIT ONLY
EARL OR MILDRED WILLIAMS
WILLIAMS TRUCKING
03617-30337

Friday, August 18, 2006

To:  State of California Board of Prison Terms
   1515 K Street, #600
   Sacramento, CA 95814-4053

From: Jerry Welch

Concerning inmate Rogelio Cordoba:
I'm a close friend of the family and I've known the inmate
as a child and his family for many years.
I'm willing to help the inmate financially and with a job in
my Welding Shop until he is able to get on his feet and at
least be an encouragement to him.
By assisting him with a job maybe this can help to be a
beginning of a productive life back in society.

Jerry Welch          JERRY'S UPHOLSTERY
                     3203 W. JEFFERSON BL.
                     OS ANGELES, CALIF. 9001℃

*Jerry Weler.*

                     COPY TO:
                        Mr. Rogelio Cordoba D22031
                        Z240 LOW
                        P.O. Box 689



CTF

Monday, May 29, 2006          In the Year of My Lord and Savior, Jesus Christ

From: Ashton Cordoba
3941 S. Arlington
Los Angeles, CA 90008

To:  State of California
     Board of Prison Terms
     1515 K Street, #600
     Sacramento, CA 95814-4053

Re: Inmate
Rogelio Cordoba (D22031)
Z-240 Low
P.O. Box 689
Soledad, CA 93960-0689


To the Parole Board:

My name is Ashton Cordoba and I'm Rogelio Cordoba's Father. As I have been
praying for many years that God will grant, one day, freedom to my Son, I'm
preparing to retire from work. I'm going to prepare a place back home in Panama
for my Son and I.
I'm up in age now and in my last days I would like to spend it with him.
Upon my Son's release from prison, his family and I back in Panama, will receive
him home and have a place for him to begin his life over.
I thank you for taking the time to consider this letter.


In His Service

*Ashton Cordoba*

Ashton Cecil Cordoba

**EMPIRE MAINSCAPE**
**MAINTENANCE SERVICE AND LANDSCAPE CARE**

division of Empire Graphics Design, LLC
california corporation #200111610050

2026 N. Riverside Ave. • Suite 206
Rialto, CA 92377
Ph (909) 426-0572
Fx (909) 426-0518

*June 1, 2006*

*To:  State of California*
*Board of Prison Terms*
*1515 K Street, #600*
*Sacramento, CA 95814-4053*

*Cc:  Mr. Rogelio Cordoba (D22031)*
*Z-240 Low*
*P.O. Box 689*
*Soledad, CA 93960-0689*

*Dear Board of Prison Terms:*
*This letter is in support of inmate Rogelio Cordoba to assist him financially with a job upon*
*his release from prison. Empire MainScape prides its self in landscaping and training new*
*employees in maintaining personal and business grounds*
*As for the inmate, we will train him and pay him at the same time. The job will commence*
*at minimum wage and as time progresses we will increase his wage.*
*We are committed to assist him financially to get a new start on life. This is an opportunity*
*for the inmate to get back on his feet and have some income in the process.*

*Most Sincerely,*

*Rodolfo Cordoba*
*CEO/President*

Mrs. Delfina Lewis
6049 Boeing Drive
Columbus, GA 31909
706-464-9892 cell
706-221-8693 home

June 5, 2006

State of California
Board of Prison Terms
1515 K St # 600
Sacramento, CA 95814-4053

Parole Board Support Letter for:

Rogelio Cordoba
D-22031 Z-240 low
P.O. Box-689
Soledad CA, 93960-0689

Dear Parole Board Members:

I am the cousin of inmate Rogelio Cordoba and I am writing this letter, requesting leniency on his behalf. Our family is a cohesive and loving family and we look out for each other. We will assist him upon his release to get situated and be a support to him. We will support him spiritually and financially.

Please grant him the opportunity to show that he can be an asset to society and that he has been rehabilitated.

Thanks for assisting my family by granting Rogelio Cordoba parole.

Sincerely,

Delfina E Lewis

Mrs. Delfina E. Lewis
Special Education Teacher

# Church of the Transfiguration

2515 W. Martin Luther King Jr., Blvd.
Los Angeles, CA 90008

Phone: 323.291.1136                                    Fax: 323.291.8216

May 17, 2006

State of California
Board of Prison Term
1515 K St. #600
Sacramento, CA 95814-4053

To Whom It May Concern:                    **RE: ROGELIO CORDOBA D22031**

This letter is on behalf of Mr. Rogelio Cordoba who seeks parole. Mr. Cordoba has spent nearly half his life in prison and all of his adult life behind bars. It is my sense that he has had ample time to reflect on his actions and is ready to return to civic life as a reformed and rehabilitated member of society.

This man's mother has kept prayerful vigil for her son throughout his many years of imprisonment. Those prayers are being answered in this man's understanding of the evil of his past actions. Some men mature in prison and reach the point of realizing how others are affected by their actions. Mr. Cordoba is one such man. He is remorseful. He wants to make up for the suffering through which he has put others, first the victim's family and secondly his very own mother.

Clearly there is no way to ever make up for life, but healing for the victim's family must come through forgiveness and the eventual joyful news that a man's repentance has lead to new and productive life as atonement. I beg the parole board to consider his plea. Give Mr. Cordoba a chance to demonstrate the value of the state corrections system, to demonstrate a life turned around, to demonstrate that past actions can be redeemed.

Mr. Cordoba has an extended family waiting for him when he returns home from prison. He has a church family who will welcome him back and walk with him, even guide him in the ways of morality, namely how to do good and avoid evil. There will be support for this man.

My persevering hope is that you grant Mr. Rogelio Cordoba parole while maintaining the utmost respect and honor for those victimized by his crime.

Sincerely yours,

Rev. Richard Martini
Pastor

State of California
Board of Prison Term Chairman
1515 K Street #600
Sacramento, CA 95814-4053

Dear Parole Board,

I am writing to you regarding my son Rogelio Cordoba. I have been anxiously awaiting is release home. I miss Rogelio with all my heart. In the middle of the night I sometimes awaken with Rogelio on my mind because of dreams I have of him as a child. It's hard to go back to sleep knowing more of his life has been spent incarcerated. I look forward to his release soon.

My son Rogelio is the third and last of my sons. Rogelio was usually a good child. Although he was an average student, he always had good behavior reports. As a boy, he played basketball from a very young age and is also talented in the arts and loves to draw. Since his incarceration, Rogelio has kept hold of his good behavior. Despite the circumstances he received his G.E.D., completed Vocational Print Shop, Welding & Upholstery. I'm sure his completion of the self help groups (A.A.N.A. Impact, Life Plan for Recovery, Breaking Barriers, Alternative to Violence, Anger Management and Morals & Values) have helped to build his character and self-esteem. But most of all, I am so proud of Rogelio confessing the belief of Christ and getting baptized. I truly believe my son (now a man) can be a law abiding citizen and help to encourage other mislead or mischievous people to change their lives around. I believe it's never too late.

When Rogelio is released he can live with me. I am prepared to provide shelter, food and clothing for him. I pray that Rogelio's home coming is soon. Please consider my letter of support for Rogelio Cordoba.

Sincerely,

*Edilka Cordoba*

Edilka Cordoba
4565 Don Tomaso Drive #1
Los Angeles, CA 90008
(323) 295-0862

Panama, November 17, 2004

Hello Nephew:

I hope that when you receive this letter it finds you enjoying good health. I spoke to my sister, your mother and she explained your situation which for me is no problem, since you are my sister's son. Here in Panama I have my own house with 3 bedrooms, my son Armando works with the police department as a musician, he lives with his girlfriend, so you can live with me. I also have two businesses here in Panama of fast food and another of a restaurant for all but we have for sure daily business with construction, you can work with me. I also spoke with my Brother-In-Law Ernesto who has an Import/Export business and is also willing to help you, so you don't have to worry about work or where to live. God is great and works in mysterious ways, everything is through him. Let us have faith in God that all will go well. My phone number is 221-65-88 and my cellular is 636-1513. My address is Via España calle 78 casa #1087. Write to Ambrose Reginald Johnson zona 9a Carrasquilla, Panama, Republica de Panama. So you can stay in touch with me I'm enclosing copies of my regular ID, my retired police officer ID, and my social security card. Without more to add and with God's favor we are awaiting your arrival with open arms.

"WE ARE PRAYING FOR YOU"

YOUR UNCLE REGGIE.

Yo, Licdo. EMETERIO MILLER R., Notario Público Cuarto del Circuito de Panamá, con Céd. de identidad personal N° 3-40-543 CERTIFICO: Que las firmas anteriores son auténticas, pues han sido reconocidas por los firmantes como suyas.

Panamá, 1 7 NOV 2004

TESTIGO                    TESTIGO

Licdo: EMETERIO MILLER R.

# EXHIBIT E
# (CHRONOS / CERTIFICATES)

# Certificate of Completion

*presented to*

## R. Cordova

for completion of the Interfaith based

## ANGER MANAGEMENT COURSE

presented this third day of December in the year 2004 . He is commended for his participation and enthusiasm in this endeavour.

**IMAM ANTAR JANNAH**
Muslim Chaplain/Course Instructor
Correctional Training Facility



DEVELOPMENT CENTER

# Correctional Training Facility

## Certificate of Recognition

This Certificate of Recognition is to acknowledge that

**_CORDOBA, R._**

Has affirmed a dedication to serve as an Official during the 2005 CTF-Central Flag Football Season

_B. Henares_

Recreation Supervisor

B. HENARES

# Certificate of Completion

*presented to*

## R. Cordova

for completion of the Interfaith based

### ANGER MANAGEMENT COURSE

presented this third day of December in the year 2004 . He is commended for his participation and enthusiasm in this endeavour.



**IMAM AVTAR JANNAH**
Muslim Chaplain/Course Instructor
Correctional Training Facility



DEVELOPMENT CENTER

**NAME:** Cordoba, R.        **NUMBER:** D-22031        **HOUSING:** Z-Wing-240L    CDC-128A(Rev.4/7)

Inmate **Cordoba, R.** CDC# D-22031, Z-Wing-240L has shown to be an asset to the recreation department as the flag football coordinator. He takes his responsibilities seriously and follows instructions that are given him. Cordoba is a hard working individual who has demonstrated that he can get along with all ethnic groups which is a must within this department. He is highly respected and is a credit to his peers and should be commended for his time and effort.

**Distribution:**
C-File
Ed. File
Recreation File
Inmate

*B. Henares*
B. Henares
Recreation Supervisor
CTF-Central Facility

**DATE:** September 13, 2006        **LAUDATORY CHRONO**

---

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                    CDC-128 B (5-05)
**NAME and NUMBER        CORDOBA, R.**                    **D22031        ZW-240L**

Since May 2006, Inmate CORDOBA has volunteered his spare time to assist in repairing the soccer/football field. Repairing the field has been an extensive project that first included hand turning the soil and leveling the field for the application of grass seed and fertilizer. Inmate CORDOBA is one of a hand-full of inmates who has consistently stayed with the tasks of weeding, watering, mowing and maintaining barriers which has allowed the grass to reach maturity with a stable root base. Inmate CORDOBA has demonstrated excellent skills in working with other inmates, as well as determination to complete the job. This type of selfless dedication in sustaining volunteer efforts to see the job through is of great benefit to the CTF inmate population as well as the institution. Inmate CORDOBA is lauded for his dedication to a job well done and continued volunteer efforts to improve the recreation field.

ORIG    :    **Central File**
cc        :    Recreation Department
            :    Inmate

*B. Henares*
**B. HENARES**
Recreation Supervisor
Correctional Training Facility - Central

**DATE**    November 12, 2006                *LAUDATORY*                **GENERAL CHRONO**

NAME and NUMBER:     **CORDOBA**     **D-22031**     **ZW-240**     CDC-128B

Inmate **CORDOBA, D-22031** is an active member in good standing with the Balanced Reentry Activity Group (BRAG), CTF's extended parole preparedness program. Authorized in January 2004, BRAG is an offender initiative that partners with staff sponsors to develop and access parole services programs, information and resources. Mr. Cordoba is a Steetring Committe member. His duties include conducting surveys of members' parole plans and assessing the particular needs of the individual. Mr. Cordoba is commended for his work ethic and commitment to parole readiness. He shares responsiblilty for BRAG's

development towards meeting the needs of offenders.

Orig:  C-File
cc:    CC-I
       Group
       Inmate

**P. Weston, Principal Sponsor**
*Balanced Reentry Activity Group*
Correctional Training Facility

DATE        5-4-2006        **GROUP/ LAUDATORY CTF-Central**        GENERAL CHRONO

---

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                        CDCR-128 B (5-05)

NAME and NUMBER        CORDOBA, R.                        D22031        ZW-240L

Mr. CORDOBA, D22031 has participated in "The Marriage Relationship" class. A Christian based five-week (5) course. In this class he learned the biblical principals of: The marriage relationship, the biblical model for marriage and marital conflicts (man's way and God's way). This student successfully "Participated" this class and is to commended for his effort in self-improvement. He has demonstrated the skill necessary to share in a successful marriage, and has developed valuable assets which will prove useful upon his release from prison.

**Reverend Judge C. Lindsey**
Protestant Chaplain
CTF-Soledad

ORIG    :    Central File
cc      :    Protestant Chapel
        :    Inmate

**DATE**    11/14/2006        ***LAUDATORY***                    GENERAL CHRONO

STATE OF CALIFORNIA
CDC 101 (6/06)

**WORK SUPERVISOR'S REPORT**

DEPARTMENT OF CORRECTIONS & REHABILITATION

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | / | A. DEMONSTRATED SKILL AND KNOWLEDGE | / | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | / | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | / | G. LEARNING ABILITY |
| 3 = SATISFACTORY | / | C. ATTITUDE TO SUPERVISORS AND STAFF | / | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | / | D. INTEREST IN ASSIGNED WORK | / | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | / | E. EFFORT DISPLAYED IN ASSIGNED WORK | / | J. QUANTITY OF WORK |

| PAY STATUS:  FROM: $ | TO: $ | FROM: JOB NO. RECCC.007 | TO: JOB NO. RECCC.007 |
|---|---|---|---|

| Total # Hours Assigned: | 40 Hours/Week | Total # Hours Worked: | 40 Hours/Week | |
|---|---|---|---|---|

| SUBJECT ASSIGNED TO Recreation Department | DATE ASSIGNED 10/04/05 | ACTUAL WORK CONSISTS OF Recreational Worker | PERIOD COVERED BY REPORT 10/1/06 — 12/31/06 |
|---|---|---|---|

RECOMMEND FOR:  ☐ REASSIGNMENT  ☒ RETAIN  ☐ PAY INCREASE  ☐ PAY DECREASE

INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) Does as he is told by supervisor. He is very active and eager to try new responsibilities.

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS B.H.          INMATE'S INITIALS

| SUPERVISOR B. HENARES, Supervisor    Recreation Department | LENGTH OF SUPERVISION 15 Months | WORK DETAIL Education | ETHNICITY BLA |
|---|---|---|---|
| INMATE'S NAME Cordoba, R. | CDC NUMBER D22031 | INSTITUTION CTF - Central | DATE 12/31/06 |

STATE OF CALIFORNIA
CDC 101 (1/92)

**WORK SUPERVISOR'S REPORT**

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | / | A. DEMONSTRATED SKILL AND KNOWLEDGE | / | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | / | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | / | G. LEARNING ABILITY |
| 3 = SATISFACTORY | / | C. ATTITUDE TO SUPERVISORS AND STAFF | / | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | / | D. INTEREST IN ASSIGNED WORK | / | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | / | E. EFFORT DISPLAYED IN ASSIGNED WORK | / | J. QUANTITY OF WORK |

| PAY STATUS:  FROM: $ | TO: $ | FROM: JOB NO. RECCC.007 | TO: JOB NO. RECCC.007 |
|---|---|---|---|

| Total # Hours Assigned: | 40 Hours/Week | Total # Hours Worked: | 40 Hours/Week | |
|---|---|---|---|---|

| SUBJECT ASSIGNED TO Recreation Department | DATE ASSIGNED 10/04/05 | ACTUAL WORK CONSISTS OF Recreational Worker | PERIOD COVERED BY REPORT 6/1/06 — 9/30/06 |
|---|---|---|---|

RECOMMEND FOR:  ☐ REASSIGNMENT  ☒ RETAIN  ☐ PAY INCREASE  ☐ PAY DECREASE

INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) A hard worker who is precise and efficient.

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS B.H.          INMATE'S INITIALS

| SUPERVISOR B. HENARES, Supervisor    Recreation Department | LENGTH OF SUPERVISION 12 Months | WORK DETAIL Recreation | ETHNICITY BLA |
|---|---|---|---|
| INMATE'S NAME Cordoba, R. | CDC NUMBER D22031 | INSTITUTION CTF - Central | DATE 10/1/06 |