1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   JULIE L. GARLAND
    Senior Assistant Attorney General
4   ANYA M. BINSACCA
    Supervising Deputy Attorney General
5   BRIAN C. KINNEY, State Bar No. 245344
    Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA 94102-7004
7     Telephone: (415) 703-5255
      Fax: (415) 703-5843
8     Email: Brian.Kinney@doj.ca.gov

9   Attorneys for Respondent Ben Curry, Current Acting
    Warden at the Correctional Training Facility

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE EASTERN DISTRICT OF CALIFORNIA

13                      OAKLAND DIVISION

14

15  **ROGELIO CORDOBA,**                    C 07-04579 CW

16                          Petitioner,

17          **v.**

18  **BEN CURRY, Warden,**

19                          Respondent.    Judge: The Honorable Claudia Wilken

20

21            **ANSWER TO THE ORDER TO SHOW CAUSE;**
              **MEMORANDUM OF POINTS AND AUTHORITIES**
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

ANSWER ............................................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 7

    ARGUMENT

    THE STATE COURT DENIAL OF CORDOBA'S HABEAS CLAIM WAS
    NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION
    OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN
    UNREASONABLE DETERMINATION OF THE FACTS. ................................ 7

    A.   The California Supreme Court's Decision Was Not Contrary to Clearly
        Established Federal Law. .................................................................. 7

        1.   The Ninth Circuit's some-evidence test is not clearly
            established Supreme Court law. ............................................ 7

        2.   Even if the some-evidence standard were clearly established
            federal law, the state court decision was not contrary to this standard. ... 9

        3.   The California Supreme Court's decision was not an
            unreasonable application of the some-evidence standard. ........... 10

    B.   The California Supreme Court's Decision Upholding the Board's Parole
        Denial Reasonably Determined the Facts. ......................................... 12

CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Carey v. Musladin*
    549 U.S. 70, 127 S. Ct. 649, 653 (2006)      8

*Foote v. Del Papa*
    492 F.3d 1026, 1029 (9th Cir. 2007)      8

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
    442 U.S. 1, 12 (1979)      5-7, 9, 13

*Himes v. Thompson*
    336 F.3d 848, 853 (9th Cir. 2003)      10

*In re Dannenberg*
    34 Cal. 4th 1061, 1087 (2005)      5, 6

*In re Rosenkrantz*
    29 Cal. 4th 616, 658 (2002)      10

*Irons v. Carey*
    505 F.3d 846, 851 (9th Cir. 2007)      5, 9

*Nguyen v. Garcia*
    477 F.3d 716 (9th Cir. 2007)      8

*Schriro v. Landrigan*
    __ U.S. __, 127 S. Ct. 1933, 1942 (2007)      8

*Sandin v. Connor*
    515 U.S. 472, 484 (1995)      5

*Sass v. Cal. Bd. of Prison Terms*
    461 F.3d 1123 (9th Cir. 2006)      5, 9, 10

*Superintendent v. Hill*
    472 U.S. 445 (1985)      9, 10

*Wainwright v. Greenfield*
    474 U.S. 284 (1986)      9

*Williams v. Taylor*
    529 U.S. 362, 412 (2000)      7

*Wright v. Van Patten*
    __ U.S. __, 128 S. Ct. 743, 746-747 (2008)      8

TABLE OF AUTHORITIES  (continued)

Page

**Statutes**

California Penal Code
    § 3041(b)    5, 10

United States Code, Title 28
    § 2244(d)(1)    6
    § 2254(d)(1)    5
    § 2254(d)(1-2)    7
    § 2254(d)(2)    12


**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)    7-9, 12, 13

California Code of Regulations, Title 15
    § 2282    6
    § 2402, subd. (c)(1)    10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone: (415) 703-5255
    Fax: (415) 703-5843
8   Email: Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Current Acting
   Warden at the Correctional Training Facility

10

11                IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         OAKLAND DIVISION

14

15  **ROGELIO CORDOBA,**                    C 07-04579 CW

16                          Petitioner,     **ANSWER TO THE ORDER TO SHOW
                                            CAUSE; MEMORANDUM OF POINTS**
17              v.                          **AND AUTHORITIES**

18  **BEN CURRY, Warden,**

19                          Respondent.
                                            Judge: The Honorable Claudia Wilken
20

21     In this habeas corpus action, state inmate Rogelio Cordoba contends that the Board of

22  Parole Hearings unconstitutionally denied him parole at his 2006 subsequent parole consideration

23  hearing.

24     This Court issued an order to show cause on March 5, 2008.  Respondent Ben Curry, the

25  current Acting Warden of the Correctional Training Facility, answers as follows:

26  / / /

27  / / /

28  / / /

Answer to Order to Show Cause; Mem. of P. & A.                    *Cordoba v. Curry*
                                                                  C 07-04579 CW

**ANSWER**

In response to the petition for writ of habeas corpus filed on September 5, 2007, Respondent hereby admits, denies, and alleges:

1.     Cordoba is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1985 conviction for the second-degree murder of Marvin McIntosh and assault with a firearm on Willie Allen Rubin.  (Ex. A, Abstract of Judgment; Ex. B, California Court of Appeal Opinion, dated June 20 1980, at p. 2.)  Cordoba is currently serving an indeterminate sentence of seventeen years to life.  Cordoba does not contest his conviction in the instant action.

2.     Respondent affirmatively alleges that on February 2, 1985 Cordoba, whose street name was "Loco Doc," fired two .38 caliber gunshots at Willie Rubin and Marvin McIntosh from the passenger window of his crime partner's car.  (Ex. B, at pp. 5-8.)  One of the bullets fired by Cordoba killed Marvin McIntosh when it penetrated his head.  (*Id.*)

Cordoba's crime partner in the February 2, 1985 commitment offense, Rodney Tommy Smith (known on the street as "Snowman"), was responsible for two separate shootings on January 30, 1985 and February 1, 1985.  (Ex. B, at pp. 4-5.)  Thereafter, on February 2, 1985, Smith and Cordoba perpetrated the commitment offense.  (*Id.* at p. 5.)  The police investigation indicated that Smith and Cordoba were associates of the Crips street gang and the murder victim was associated with the rival "Rolling 50 Bloods."  (Ex. C, Probation Officer's Report, at p. 2.)

On the night of February 2, 1985, Cordoba and Smith departed in Smith's car.  (Ex. B, at p. 5.)  The car traveled down the street, headlights off, toward victims Willie Rubin and Marvin McIntosh.  (*Id.*)  The car slowed, and proceeded past the two individuals, who had taken refuge behind two cars parked in a driveway.  (*Id.* at p. 6.)  The car stopped and Cordoba fired two shots from the passenger side.  (*Id.*)  One shot struck McIntosh in the head and killed him.  (*Id.*)

Later that evening, Smith told Ronnie Luke that he and Cordoba had gone riding through the "Fifties hood," and that Cordoba had "blasted some Fifties."  (*Id.*)  Smith also told Ronnie Luke that Cordoba had yelled "Harlem Crips, roll in thirties" as they drove by.  (*Id.*)

3.     According to Cordoba's testimony at the 2006 parole consideration hearing, he "did

1   not mean to kill anyone or hurt anyone[; he] was just shooting because they scared [him]." (Ex.

2   D, 2006 Parole Hearing Transcript, at p. 29.) He alleged that he "didn't even know where they

3   [the victims] was [sic] at. I was firing in the direction where Mr. Smith had told me they was

4   [sic] at." (*Id.* at pp. 38-39.)

5       Cordoba admitted that his crime partner was a gang member but denied that he himself was

6   ever a member of the Crips. (*Id.* at pp. 30, 34.) Cordoba testified that on the night of the

7   shooting, he had asked Smith for a ride to a party. (*Id.* at pp. 10-11.) According to Cordoba, he

8   asked Smith for a ride on that night because Smith was a guy he knew from school and

9   basketball. (*Id.* at pp. 14-15.) Cordoba told the Board that after leaving a McDonald's

10  restaurant, the two continued on their way to the party and "that's when the incident happened."

11  (*Id.* at pp. 10-11.)

12      Cordoba alleged that Smith told him that someone was shooting at them. (*Id.* at p. 28.)

13  According to Cordoba, he was not aware someone was shooting because he had his passenger

14  seat reclined. (*Id.*) Cordoba further alleged that Smith gave him the gun and told him that he

15  was being shot at. (*Id.* at pp. 28, 39.) Cordoba alleged that out of fear, he fired the gun, without

16  aiming, in the direction where Smith told him to fire. (*Id.* at pp. 28-29, 39.)

17      Cordoba also denied that his nickname was ever "Loco Doc." (*Id.* at pp. 16-17, 35.)

18  Instead, he maintained that his friends called him "Doc" in reference to Doctor J, because he had

19  played basketball. (*Id.* at pp. 16-17.)

20      4.   Respondent affirmatively alleges that the Los Angeles County District Attorney's

21  Office opposed Cordoba's parole. (Ex. D, at p. 40.)

22      5.   Respondent affirmatively alleges that Cordoba has a criminal record for arrests

23  occurring before his commitment offense. (Ex. C, at p. 7.) Specifically, Cordoba was arrested

24  for robbery in 1983 and trespass in 1984. (*Id.*; Ex. D, at pp. 11-12.) Neither arrest resulted in a

25  conviction. (Ex. C, at p. 7.)

26      6.   Respondent admits that the Board found Cordoba unsuitable for parole at his

27  September 12, 2006 parole consideration hearing. (Ex. D, at pp. 46-52.) Respondent

28  affirmatively alleges that the Board based its denial on the gravity of the commitment offense,

1   Cordoba's inability to satisfactorily articulate his degree of participation in the crime, his

2   inability to adequately explain why he was associating with known gang members, and his failure

3   to demonstrate insight into the factors that caused him to get involved in a gang shooting. (*Id.* at

4   pp. 46, 50-51.) As to the commitment offense, the Board found that it was carried out in an

5   especially callous manner, that it was dispassionate and calculated, that it demonstrated an

6   exceptionally callous disregard for human suffering, and that the motive for the crime was very

7   trivial in relation to the offense. (*Id.* at p. 46.)

8       The Board's denial also noted Cordoba's escalating pattern of criminal conduct leading up

9   to the commitment offense, the Los Angeles County District Attorney's opposition to parole, and

10  Cordoba's 2006 psychological evaluation report. (*Id.* at p. 49.)

11      The 2006 psychological report documents Cordoba's version of the commitment offense as

12  presented to evaluating psychologist Dr. Macomber. (Ex. E, 2006 Mental Health Evaluation, at

13  p. 3.) In describing Cordoba's version of the shooting, the report notes, "Someone was

14  accidentally killed as a result of his actions. . . . It was dark, and he did not aim [the gun] at

15  anyone. However, he accidentally shot the 19 year old victim." (*Id.*) At his 2006 parole

16  consideration hearing, Cordoba initially told the Board that he never used the word

17  "accidentally" when describing the crime to Dr. Macomber. (Ex. D, at p. 24.) Cordoba later

18  stated that he may have used the word "accidentally" in his description because "I didn't mean to

19  kill anyone or hurt anyone, I was just shooting because they scared me." (*Id.* at p. 28.) As a

20  result, the Board's denial directed that this discrepancy needs to be clarified in another

21  psychological evaluation. (*Id.* at p. 49.)

22      7.   Respondent admits that Cordoba filed a habeas petition in the California Supreme

23  Court generally alleging the same claims that he alleges here. (Ex. F, California Supreme Court

24  Petition.) The California Supreme Court issued a summary denial of Cordoba's petition on the

25  merits of his claims. (Ex. G, California Supreme Court Denial.) Thus, Respondent admits that

26  Cordoba exhausted his state court remedies in regard to the claims concerning the Board's 2006

27  decision to deny him parole. However, Respondent denies that Cordoba exhausted his claims to

28  the extent that they are more broadly interpreted to encompass any systematic issues beyond the

1  2006 denial.

2      8.    Respondent denies that the state court's adjudication of Cordoba's claim was contrary

3  to, or involved an unreasonable application of, clearly established federal law as determined by

4  the Supreme Court.  28 U.S.C. § 2254(d)(1).

5      9.    Respondent preserves the argument that Cordoba does not have a federally protected

6  liberty interest in parole.  *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty

7  interest is created unless an action imposes an atypical or significant hardship compared with

8  ordinary prison life); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12

9  (1979) (liberty interest in conditional parole-release date created by unique structure and

10  language of state parole statute); and *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005)

11  (California's parole scheme is a two-step process that does not impose a mandatory duty to grant

12  life inmates parole before a suitability finding); *contra Sass v. Cal. Bd. of Prison Terms*, 461

13  F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected

14  liberty interest in parole date).

15      10.   Respondent affirmatively alleges that Cordoba had an opportunity to present his case to

16  the Board, and the Board provided him with a detailed explanation for its parole denial.  Thus,

17  Cordoba received all process due under *Greenholtz*, the only clearly established federal law

18  regarding due process rights of inmates at parole hearings.

19      11.   Respondent affirmatively alleges that the Board's decision is supported by some

20  evidence.  However, notwithstanding the Ninth Circuit's decision in *Irons v. Carey*, 505 F.3d

21  846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever clearly established

22  that a state parole board's decision must be supported by some evidence.

23      12.   Respondent affirmatively alleges that the Board did not rely solely on the commitment

24  offense to deny parole.  (Ex. D, at pp. 49-51.)  Respondent further affirmatively alleges that

25  federal due process does not preclude the Board from relying on immutable factors to deny

26  parole.  *Sass*, 461 F.3d at 1129.  The Board properly considered the gravity of Cordoba's

27  commitment offense as required under California law.  *See* Cal. Penal Code § 3041(b).

28  Respondent denies that the commitment offense has lost its predictive value and is no longer

Answer to Order to Show Cause; Mem. of P. & A.                    *Cordoba v. Curry*
                                                                 C 07-04579 CW

1   evidence of Cordoba's current risk of dangerousness to society.

2       13.   Respondent admits that California's parole regulations contain a matrix of suggested

3   base terms that prisoners with life sentences should serve before released on parole. *See* Cal.

4   Code Regs. tit. 15, § 2282.  However, under California law, an inmate's base term can be set

5   only after the Board finds the inmate suitable for parole, because the statutory scheme places

6   individual suitability for parole above a prisoner's expectancy in an early setting of a fixed date

7   designed to ensure term uniformity. *Dannenberg*, 34 Cal. 4th at 1070-71.  Accordingly,

8   Respondent denies that the Board violated California law concerning the matrix of suggested

9   base terms.  Respondent further denies that statutory or constitutional law requires the Board to

10  compare Cordoba's crimes to other instances of the same crime when deciding whether to grant

11  parole.  Additionally, Respondent denies that Cordoba maintains a clearly established federal

12  right based upon the frequency in which the Board sets parole dates for other inmates, or a

13  federal right to have the Board apply California's matrix of suggested base terms.

14      14.   Respondent denies that the Board disregarded Cordoba's 2006 Mental Health

15  Evaluation or failed to consider factors indicative of parole suitability.  Rather, the Board

16  considered and evaluated all relevant information contained in Cordoba's central file.

17  Respondent maintains that it is not for this Court to re-weigh the evidence and reach a different

18  result. *Greenholtz*, 442 U.S. at 16.

19      15.   Respondent admits Cordoba's claims are timely under 28 U.S.C. § 2244(d)(1), and are

20  not barred by any other procedural defenses.

21      16.   Respondent denies that an evidentiary hearing is necessary in this matter.

22      17.   Respondent affirmatively alleges that Cordoba fails to establish any grounds for federal

23  habeas relief.

24      18.   Except as expressly admitted above, Respondent denies, generally and specifically,

25  each allegation of the petition, and specifically denies that Cordoba's administrative, statutory, or

26  constitutional rights have been violated in any way.

27      Accordingly, Respondent respectfully requests that the Court deny the petition and dismiss

28  these proceedings.

Answer to Order to Show Cause; Mem. of P. & A.

*Cordoba v. Curry*
C 07-04579 CW

6

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

**THE STATE COURT DENIAL OF CORDOBA'S HABEAS CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role of federal habeas courts in reviewing petitions filed by state prisoners by placing a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits only if the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

### A.    The California Supreme Court's Decision Was Not Contrary to Clearly Established Federal Law.

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole proceeding. The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and an explanation for a parole denial. *Greenholtz*, 442 U.S. at 16.

Cordoba received both of these protections at his 2006 parole consideration hearing. (See generally Ex. D.) Furthermore, Cordoba does not contend otherwise in his petition. Accordingly, Cordoba's petition fails under AEDPA because he received all procedural protections due under clearly established federal law.

#### 1.    The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.

The some-evidence standard of review should not apply to a federal habeas proceeding

Answer to Order to Show Cause; Mem. of P. & A.

*Cordoba v. Curry*
C 07-04579 CW

1  challenging a parole denial, because the Supreme Court has never found that due process requires

2  this level of judicial review.

3      The United States Supreme Court has reiterated that for AEDPA purposes, "clearly

4  established federal law" refers only to the holdings of the nation's highest court on the specific

5  issue presented. *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006). In *Musladin*, the

6  Ninth Circuit held that under clearly established federal law, courtroom spectators who wore

7  buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him

8  a fair trial. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court explained that

9  the two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant who

10  was required to wear prison clothing during trial and the other concerning a defendant who had

11  four uniformed troopers placed behind him at trial — involved state-sponsored courtroom

12  practices that were unlike the private conduct of the victim's family. *Id.* at 653-54. As a result,

13  the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not

14  be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'" *Id.* at

15  653-54.

16      Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

17  1942 (2007), that a federal habeas petitioner maintained no claim under AEDPA because

18  Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

19  adequately investigate mitigating evidence is factually distinct from a defense attorney failing to

20  investigate mitigating evidence after the client demonstrates a reluctance to assist the

21  investigation. Consequently, the Supreme Court indicated that circuit courts may not import —

22  under the guise of "clearly established federal law" — a federal standard used in one

23  context to a different factual circumstance. *Id.*; *see also Musladin*, 127 S. Ct. at 653-54; *Wright*

24  *v. Van Patten*, __ U.S. __, 128 S. Ct. 743, 746-747 (2008).[1]

---

26      1. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. *See*
*e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of

27  habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of
interest because the Supreme Court has never held — even though the Ninth Circuit has — that such

28  an irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th

1    Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

2    *Hill* some-evidence standard of review — a Supreme Court holding applicable to prison

3    disciplinary hearings — to habeas petitions challenging denials of parole. *Sass v. Cal. Bd. of*

4    *Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445

5    (1985) — a prison disciplinary case — for proposition that Board's denial of parole requires

6    some evidence); *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) (pet. for reh'g en banc denied).

7    Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

8    rights of an inmate in the parole context, specifically recognized the procedural distinction

9    between the government denying an inmate parole and the government determining guilt by way

10   of an adversarial proceeding. *Greenholtz*, 442 U.S. at 15-16. Based on this distinction, the

11   Supreme Court determined that a denial of parole only requires the state to provide an

12   opportunity for the inmate to present his case and an explanation for the parole denial — not

13   additional protections, such as those in an adversarial proceeding. *Id.* (reasoning that "to require

14   the parole authority to provide a summary of the evidence would convert the [parole-

15   consideration] process into an adversary proceeding and to equate the Board's parole release

16   determination with a guilt determination").

17   As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

18   prison disciplinary hearings should not apply to a federal habeas proceeding challenging a parole

19   denial. However, Respondent recognizes that the Ninth Circuit has held otherwise and will argue

20   this case accordingly.

21   **2.    Even if the some-evidence standard were clearly established
        federal law, the state court decision was not contrary to
22      this standard.**

23   Assuming the some-evidence standard applies, Cordoba's claim fails under AEDPA

24   because the California Supreme Court's decision was not contrary to this minimally stringent

25   standard. The some-evidence standard of review "does not require examination of the entire

26   _____

27   Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel
     — established in *Wainwright v. Greenfield*, 474 U.S. 284 (1986) — to a competency hearing, federal
28   law was not clearly established for AEDPA purposes).

Answer to Order to Show Cause; Mem. of P. & A.                          *Cordoba v. Curry*
                                                                        C 07-04579 CW

9

1   record, independent assessment of the credibility of the witnesses, or weighing of the evidence;"

2   rather, it is satisfied if there is "any evidence in the record that could support the conclusion

3   reached by the disciplinary board." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129

4   (stating that "*Hill's* some evidence standard is minimal").

5       California law requires that some evidence support the Board's decision to deny parole. *In

6   re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002). Therefore, the California Supreme Court denial at

7   issue here applied the correct federal standard.

8

9   <center>**3.    The California Supreme Court's decision was not an
unreasonable application of the some-evidence standard.**</center>

10      When the state court holding fails to provide a reasoned explanation, as it did here, the

11  reviewing federal court must independently review the record to determine whether the state

12  court decision was a reasonable application of federal law. *Himes v. Thompson*, 336 F.3d 848,

13  853 (9th Cir. 2003). Here, the California Supreme Court denial was a reasonable application of

14  the some-evidence standard of review, because the Board's decision is supported by some

15  evidence. In fact, all six of the Board's reasons for the denial contain evidentiary support.

16      First, the Board relied on the gravity of the commitment offense as dictated by California

17  Penal Code section 3041(b). (Ex. D, at pp. 46-52; see also Ex. B [describing the facts of the

18  murder].) Based on the circumstances of the crime described in the 1988 California Court of

19  Appeal opinion upholding Cordoba's conviction, the Board found that the commitment offense

20  — second-degree murder of Marvin McIntosh and assault with a firearm on Willie Allen Rubin

21  — was carried out in an especially callous manner, that it was dispassionate and calculated, that

22  it demonstrated an exceptionally callous disregard for human suffering, and that the motive for

23  the crime was very trivial in relation to the offense. (Ex. D, at p. 46 [relying on Cal. Code Regs.

24  tit. 15, § 2402, subd. (c)(1)(B), (D), (E)].)

25      Second, the Board relied on Cordoba's inability to satisfactorily articulate his degree of

26  participation in the crime. (Ex. D, at p. 50.) Indeed, Cordoba's testimony at the 2006 parole

27  consideration hearing supports this finding. Cordoba testified that he "[j]ust shot out the window

28  . . . without aiming." (*Id.* at p. 29.) He went on to say, "I didn't even know where they was [sic]

1  at. I was firing in the direction where Mr. Smith had told me they was [sic] at." (*Id.* at pp. 38-

2  39.) He also alleged that he fired the .38 caliber handgun because Smith, the diver of car he was

3  riding in, told him that someone was shooting at them. (Ex. D, at pp. 28, 39; Ex. D, at p. 39.)[2]

4  However, based on the established facts of the case, it was reasonable for the Board to question

5  Cordoba's account of the crime.[3] As a result, the record supports the Board's finding that

6  Cordoba needs to better articulate his participation in the crime.

7      Third, the Board found that Cordoba failed to adequately explain how he got mixed up with

8  Smith and the two victims — all of whom were individuals he knew to be gang members. (Ex.

9  D, at p. 50; see also Ex. C, at p. 11 [noting Cordoba's admission that McIntosh was a member of

10  the Bloods]; and Ex. D, at p. 30 [Cordoba acknowledging Smith's membership with the Crips].)

11  Rather than clarifying his involvement in this Blood-Crip rivalry, Cordoba depicted Smith (his

12  crime partner), and the two victims (whom he shot at) as mere acquaintances from school

13  basketball. (Ex. D, at p. 11, 14-15.) As a result, some evidence supports the Board's finding that

14  Cordoba needs to better articulate his relationship to those involved.

15      Fourth, the Board found that Cordoba lacked insight into the nature of the crime. (*Id.* at p.

16  50 ["you need more insight into why you were associating with known gang members in a way

17  that resulted in you committing a murder"].) As discussed above, Cordoba's testimony

18  concerning his involvement in the crime and those involved is some evidence that he lacks

19  insight.

20      Fifth, the Board noted that Cordoba requires another mental evaluation to clarify the

21  discrepancy between Dr. Macomber's report and Cordoba's testimony. At the hearing, Cordoba

22  claimed that he did not describe the shooting as "accidental" during his evaluation. However, the

23  mental health evaluation report indicates otherwise. (Compare Ex. D, at pp. 24, 29, 49; with Ex.

24

25      2.  Cordoba rationalized that he did not observe the gunfire because he had his car seat reclined. (Ex. D, at p. 28.)

26

27      3.  Smith had perpetrated two similar shootings days before, and Cordoba knew that Smith was a member of the Crips. (Ex. B, at pp. 4-5; Ex. D, at p. 30.) Furthermore, Cordoba and Smith, traveling in Smith's car, approached the victims with the headlights off, passed the victims, and then

28  stopped at the property next door. (Ex. B, at pp. 5-6.)

Answer to Order to Show Cause; Mem. of P. & A.

*Cordoba v. Curry*
C 07-04579 CW

1    E, [Evaluation describing victim as "accidentally killed"].)  Because Cordoba's recent versions of

2    the crime are relevant in determining his degree of insight, some evidence supports the Board's

3    finding that this discrepancy requires clarification.

4        Lastly, the Board's denial referenced Cordoba's escalating pattern of criminal conduct.  (Ex.

5    D, at p. 49.)  Here, Cordoba's arrests for robbery and trespass in the years before the commitment

6    offense support the Board's finding.  (Ex. C, at p. 7.)

7        In all, the Board cited six reasons for denying parole.  Each reason contains evidentiary

8    support.  Therefore, some evidence supports the Board's decision to deny parole.

9

10        **B.    The California Supreme Court's Decision Upholding the
             Board's Parole Denial Reasonably Determined the Facts.**

11        Under the second AEDPA standard, a federal court may grant habeas relief if the state court

12    decision was based on an unreasonable determination of the facts in light of the evidence

13    presented at the State Court proceeding.  28 U.S.C. § 2254(d)(2).

14        Here, Cordoba presented the California Supreme Court with the 2006 parole hearing

15    transcript, the 2006 mental health evaluation, and Cordoba's Life Prisoner Evaluation Reports.

16    (Ex. F, at exs. A, B, C.)  An independent review of this evidence indicates that the California

17    Supreme Court's decision was not based on an unreasonable determination of the facts.

18        Indeed, the Board relied on the 1988 California Court of Appeal Opinion — upholding

19    Cordoba's conviction — for the basis of the facts of the crime.  (Ex. D, at p. 46.)  Cordoba does

20    not allege nor present any evidence that these facts, relied upon by the Board, are inaccurate.  In

21    addition, the Board relied on Cordoba's own testimony in its decision.  Again, Cordoba does not

22    allege that the Board inaccurately interpreted his testimony.

23        Accordingly, the record indicates that the Board relied on accurate information.  As a result,

24    Cordoba cannot establish that the California Supreme Court unreasonably determined the facts

25    when it upheld the Board's denial of parole.

26    / / /

27    / / /

28

Answer to Order to Show Cause; Mem. of P. & A.                      *Cordoba v. Curry*
                                                                    C 07-04579 CW

12

**CONCLUSION**

Cordoba fails to demonstrate a basis for relief under AEDPA's two standards permitting a habeas remedy after a state court has already adjudicated the same issue. Under the first standard, the California Supreme Court's adjudication of Cordoba's claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Cordoba received all process entitled under *Greenholtz*, and — although not required by clearly established federal law — some evidence supports the Board's decision. Under the second AEDPA standard, the record reflects that the evidence presented at the parole hearing, such as Cordoba's testimony, and the facts of the crime as documented in the 1988 California Court of Appeal opinion, accurately reflected the facts. Thus, Respondent respectfully requests that the petition be denied.


Dated: May 7, 2008

                                        Respectfully submitted,

                                        EDMUND G. BROWN JR.
                                        Attorney General of the State of California

                                        DANE R. GILLETTE
                                        Chief Assistant Attorney General

                                        JULIE L. GARLAND
                                        Senior Assistant Attorney General

                                        ANYA M. BINSACCA
                                        Supervising Deputy Attorney General



                                        /S/ BRIAN C. KINNEY
                                        BRIAN C. KINNEY
                                        Deputy Attorney General
                                        Attorneys for Respondent

SF2008401064

Answer to Order to Show Cause; Mem. of P. & A.                    *Cordoba v. Curry*
                                                                 C 07-04579 CW

13

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Cordoba, Rogelio v. Ben Curry, Warden**

Case No.:   **C 07-04579 CW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 7, 2008**, I served the attached

## ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Rogelio Cordoba (D-22031)
Correctional Training Facility
ZW-240L
P.O. Box 689
Soledad, CA 93960-0689
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 7, 2008**, at San Francisco, California.

| R. Panganiban | /s/ R. Panganiban |
|:---:|:---:|
| Declarant | Signature |

40250765.wpd