# EXHIBIT  B

NOT TO BE PUBLISHED

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROGELIO A. CORDOBA AND<br>RODNEY T. SMITH,<br><br>    Defendants and Appellants. | No. B019212<br>(Super.Ct.No. A-762389)<br><br>COURT OF APPEAL · SECOND DIST.<br><br>F I L E D<br><br>JUN 3 0 1988<br><br>ROBERT N. WILSON    Clerk<br><br>Deputy Clerk |
| In re<br><br>    ROGELIO A. CORDOBA,<br><br>    on<br><br>    Habeas Corpus. | No. B029137 |

APPEAL from judgments of the Superior Court of Los Angeles County. Everett E. Ricks, Judge. Judgments affirmed; writ denied.

Gerald Goldfarb, under appointment by the Court of Appeal, for Defendant and Appellant Rogelio A. Cordoba.

Frank O. Bell, Jr., State Public Defender and Patricia L. Reber, Deputy State Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant Rodney T. Smith.

John K. Van De Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Paul C. Ament and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

2.

By a consolidated information, defendant Rodney Tommy
Smith and defendant Rogelio Alberto Cordoba were charged, in
count I, with the murder of Marvin McIntosh, in violation of
Penal Code section 187.  It was alleged that in the commission
of the offense a principal was armed with a firearm, i.e., a
handgun, said arming not being an element of the above offense,
within the meaning of Penal Code section 12022, subdivision
(a).  It was further alleged that in the commission of the
offense defendant Rogelio Alberto Cordoba personally used a
handgun within the meaning of Penal Code sections 12022.5 and
1203.06, subdivision, (a)(1).

In count II, these defendants were jointly charged
with the assault, with a firearm, of Willie Allen Rubin, in
violation of Penal Code section 245, subdivision (a)(2).  It
was alleged that in the commission of the offense a principal
was armed with a firearm, i.e, a handgun, said arming not being
an element of the offense, within the meaning of Penal Code
section 12022, subdivision (a).  It was further alleged that in
the commission of the offense defendant Rogelio Alberto Cordoba
personally used a handgun within the meaning of Penal Code
section 12022.5.

Defendant Rodney Tommy Smith was charged, in count
III, with assault by means of force likely to produce great
bodily injury on Deradous Harris, in violation of Penal Code

section 245, subdivision (a). It was alleged that in the commission of the offense, defendant Smith personally used a firearm, i.e, a handgun, within the meaning of Penal Code section 12022.5. It was further alleged, in count III, that defendant Smith intended to and did inflict great bodily injury upon Harris within the meaning of Penal Code section 12022.7.

In count IV, defendant Smith was charged with an assault by means of force likely to produce great bodily injury and with a deadly weapon, upon Willie Rubin, in violation of Penal Code section 245, subdivision (a). It was further alleged that in the commission of the offense, defendant Smith personally used a firearm, i.e., a handgun, within the meaning of Penal Code section 12022.5.

Defendant Smith was also charged, in count V, with an assault by means of force likely to produce great bodily injury upon Andre West, in violation of Penal Code section 245, subdivision (a). It was further alleged that in the commission of the offense, defendant Smith personally used a firearm, i.e., a handgun, within the meaning of Penal Code section 12022.5.

Each defendant entered a plea of not guilty and waived his right to a jury trial. After a trial by the court, each defendant was found guilty as charged, and the enhancement allegations were found to be true.

4.

Defendant Smith was sentenced to 17 years to life. More specifically, he was sentenced to 15 years to life for the base term as to count I and one year for the Penal Code section 12022.5, subdivision (a) enhancement charged and found true as to count I; in addition, he was sentenced to the middle term of three years on count II (one third of which was one year), to run consecutively to the life term.

On counts II, IV and V, defendant Smith was sentenced to the middle term of three years, each to run concurrently with the sentence imposed as to count I. Defendant was given credit for time in custody.

Defendant Rogelio Alberto Cordoba was also sentenced to 17 years to life. More specifically, he was sentenced to 15 years to life for the base term as to count I, and to an additional two years for the gun use allegation found true as to count I, pursuant to Penal Code section 12022.5. The midterm of three years was imposed as to count II, with a two-year enhancement for the gun use, and the term imposed as to count II was ordered to run concurrently to that imposed as to count I. Defendant Cordoba was given credit for time in custody.

Both defendants have appealed from their judgments of conviction.

FACTUAL STATEMENT

On January 30, 1985, at about 3 p.m., Deradous Harris

was walking with four friends in the area of 46th Street and
Crenshaw, in Los Angeles.  Defendant Rodney Tommy Smith came
around a corner, approached the group and said, "Now what's
up?" and then started shooting.  Defendant Smith, known on the
street as "Snowman," fired four shots and a bullet struck
Harris just above the ankle.  Harris received medical attention
for this injury.  The bullet passed in and out of Harris' ankle
and leg; he has scars as the result.

On February 1, 1985, between 3 and 4 p.m., Willie
Rubin, Andre West and Maurice McIntosh were at the intersection
of 9th Avenue and 48th Street, Los Angeles.  Defendant Smith
drove up to that location in a beige automobile.  There were a
number of passengers in the vehicle, including some girls.
Defendant Smith fired a shot toward Willie Rubin and Andre
West, but did not hit either of them, and drove away.

On February 2, 1985, Ronnie Luke saw defendant Smith
and defendant Cordoba (street name, "Loco Doc") together; he
saw them depart in defendant Smith's automobile.  At about
7 p.m., Willie Rubin and Marvin McIntosh were standing on the
sidewalk in front of the residence at 4817 South 9th Street,
Los Angeles, waiting for a friend.

Rubin observed a beige automobile coming down the
street.  The car slowed down; the lights were turned off.  The
car continued proceeding toward Rubin and McIntosh, and passed

6.

them.   Rubin and McIntosh, having seen the car approaching with
the lights off, thought the situation suspicious and took
refuge behind two cars parked in the driveway at 4817.

The car passed 4817 and continued to the front of the
property next door where it stopped.   Two shots were fired from
the car.   McIntosh was struck in the head by a bullet, fell to
the ground and died from the wound.   Rubin heard someone inside
the car say "Cuz," and the car sped from the scene.   (There was
testimony that the word "Cuz" was one that would likely be used
by some gang member who was hostile to Blood gang members).

Ronnie Luke saw defendant Smith later on the evening
of February 2, 1985.   Smith told Luke that he and defendant
Cordoba had gone riding through the "Fifties hood."   (The
"Fifties" is a gang associated with the "Bloods," also a gang.
The "hood" refers to a neighborhood, an area where  members of
a particular gang live or gather; the "Fifties hood,"
therefore, is a neighborhood where "Fifties" live or gather).

Smith told Luke he and Cordoba had "blasted [shot]
some Fifties."   Luke initially testified at trial that Smith
had not told him who did the shooting, but was impeached by his
testimony at the preliminary hearing that Smith had told him
defendant Cordoba did the shooting.   Luke told defendant Smith
it was stupid to do that in his car, and that he and defendant
Cordoba were going to get into trouble.   Defendant Smith

responded that the Fifties should not be "blasting at us all the time." Smith told Luke that Cordoba had yelled "Harlem Crips, roll in thirties" as they drove by and had then fired one shot.

After defendant Smith told Luke this, Luke testified that he went to the Fifties hood to check out the story and observed an ambulance and some police cars. Luke was interviewed by police detectives, and told them defendant Smith had told him that he and defendant Cordoba had just shot at some bloods on 9th Avenue. The following morning, February 3, Luke saw defendant Smith again. Someone told Smith that "M Bone" was dead, and Smith had said, "Then Loco Doc is in trouble."

By stipulation, deputy medical examiner Bolduc's testimony was admitted into evidence; he had performed the autopsy on Marvin McIntosh on February 3, 1985, and had determined the cause of death to be a gunshot wound to the head.

By stipulation also, Kendall Turner's testimony was admitted into evidence; he had observed the shooting and had heard a pop which sounded like small caliber gunshot, followed by two loud bangs, which sounded like large caliber gunshot.

On February 5, 1985, Los Angeles Detective Jerry Johnson interviewed defendant Cordoba. Cordoba was advised of and waived his constitutional rights. His conversation with

8.

Detective Johnson was tape recorded, but the tape, which was at some location described as "available," had not been transcribed, as far as Detective Johnson knew. Detective Johnson testified that defendant Cordoba had told him that on February 2, 1985, he was a passenger in the car driven by defendant Smith at 7 or 7:30 p.m. As they passed a residence on 9th Avenue at approximately the 4800 block, they were fired on by rival gang members. The police officer testified that Cordoba told him that "Mr. Smith stopped the vehicle, put it in reverse, backed up for a few feet; that Mr. Smith gave him [defendant Cordoba] a .38 caliber revolver and told him to buss on them, in other words, shoot at them. And he did. He stated that he fired one shot."

Defendant Cordoba told Detective Johnson that he and defendant Smith thought it humorous that they were being fired upon with only a .22 caliber gun. Defendant Cordoba also told Detective Johnson that he was having some problems shooting at these gang members, but that defendant Smith said to him, "Don't be a mark," which means "Don't be a coward -- buss on them." Defendant Cordoba, according to Detective Johnson, told Johnson that "he leaned out or crawled partially out of the passenger window and fired the weapon over the top of the car in the direction of where the victim and persons were standing in front of the residence." Johnson further testified that he

searched the area where McIntosh was shot, and the surrounding neighborhood, to determine whether another gun had been involved in the crime, but found no evidence of this. He also testified that defendant Cordoba did not know that anyone had been hit and killed until the next day.

It should be noted that during the taking of testimony in this case, trial counsel for each defendant made motions, granted by the court, to appropriately limit testimony in its application to each defendant, when necessary.

### CONTENTIONS ON APPEAL

Both defendants on this appeal contend:  (1) that there was insufficient evidence of malice and thus no evidentiary support for their convictions of second degree murder.  (2) In addition, defendant Smith contends that there was sufficient evidence of "an unreasonable belief in the need for self-defense" to limit his criminal responsibility to a conviction for voluntary manslaughter.

During the pendency of these appeals, defendant Cordoba filed a petition for writ of habeas corpus in this court, contending that he had been denied his constitutional right to the effective assistance of counsel, a right guaranteed by both the federal and state constitutions.  On March 24, 1988, this court ordered that the petition for writ of habeas corpus on behalf of defendant Cordoba be considered concurrently with this appeal; opposition to the writ was

10.

requested from respondent Attorney General.  We have now, by an
order of June 21, 1988, consolidated the writ petition with
these appeals, and will make a disposition of it in this
opinion.

DISCUSSION

I.

Both defendants contend that there was insufficient
evidence adduced below to support their convictions of second
degree murder.

In reviewing such sufficiency of evidence claims, an
appellate court must determine "whether, after reviewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt."  (Jackson v. Virginia
(1979) 443 U.S. 307, 319; People v. Guerra (1985) 40 Cal.3d
377, 385; People v. Johnson (1980) 26 Cal.3d 557, 576.)

With respect to defendant Smith, the theory of the
prosecution was that defendant Smith aided and abetted
defendant Cordoba and should be held responsible as a principal
in the commission of the crime.  (Pen. Code, § 31).  It is
contended on defendant Smith's behalf that to establish "aiding
and abetting" it is necessary to show that not only did
defendant Smith have knowledge of the criminal purpose of the
perpetrator, Cordoba, but that defendant Smith shared that
purpose or intended to commit, or encourage, or facilitate the

11.

commission of the offense.  (People v. Croy (1985) 41 Cal.3d 1, 11-12.)

Specifically, defendant Smith argues that there was no evidence presented below from which it could be inferred that he knew in advance that defendant Cordoba was going to shoot and kill anyone, nor that defendant Smith shared that intent. It is argued that defendant Smith's conduct in turning off the headlights of his car while cruising slowly by the home on 9th Avenue was "scanty evidence" of aiding and abetting.

We disagree with defendant Smith's analysis of the evidence.  Two witnesses, Ronnie Luke and Willie Rubin, placed defendant Smith in his automobile, with a .38 caliber weapon, in hostile territory.  Smith's actions, i.e, cruising slowly down the street, turning off his headlights, stopping and then (as reported by witness and potential victim, Rubin) putting the car temporarily in reverse, suggest that defendant Smith was an active participant in planned aggression.  There was, in our view, ample evidence of "aiding and abetting" on the part of defendant Smith in committing the offenses charged in counts 1 and 2.

It should be noted that neither of these defendants was convicted of murder in the first degree, which is defined as "Murder is the unlawful kiling of a human being, or a fetus, with malice aforethought."  (Pen. Code, § 187, subd. (a).)

While the prosecution sought conviction for first degree
murder, the prosecutor argued also that the evidence could be
interpreted to show the commission of second degree murder
(committed with express or implied malice, but without
premeditation) on an implied malice theory, i.e., that when a
person does "an act, the natural consequences of which are
dangerous to life, which act was deliberately performed by a
person who knows that his conduct endangers the life of another
and who acts with conscious disregard for life . . ." the
requisite element of implied malice is present. (People v.
Watson (1981) 30 Cal.3d 290, 300). The Watson discussion of
implied malice continues, as follows: "Phrased in a different
way, malice may be implied when defendant does an act with a
high probability that it will result in death and does it with
a base antisocial motive and with a wanton disregard for human
life." (Id.)

Both of these defendants engaged in conduct which a
reasonable trier of fact could regard as inherently dangerous
to human life.

Defendant Cordoba similarly argues that there was
insufficient evidence to support his conviction because malice,
express or implied, is an essential element of the crime and
there was no evidence of malice on his part adduced below; he

13.

argues that malice was not established on a subjective rather than an objective basis by proof of his firing a shot toward a group of people; that the evidence was susceptible to the interpretation that he fired in the air to <u>avoid</u> hitting anyone; it is claimed that defendant Cordoba was in fact the victim of terribly bad luck.

These arguments do not detract from the reality that, as we have said, implied malice may be established by the <u>intentional</u> performance of an inherently dangerous act, such as firing a gun randomly at other human beings.  The evidence is that defendant Cordoba, although having second thoughts about the situation, did intend to fire the .38 handed to him by defendant Smith; there is no evidence that defendant Cordoba fired in the air; there is evidence that he fired in the direction of persons standing in front of the 9th Avenue residence, and may thus be held criminally responsible for the unfortunate consequences, the "unlucky shot" which killed Marvin McIntosh.

The appropriate standard of review applicable to assessment of a claim of insufficient evidence does not permit an appellate court to substitute its judgment for that of the trial court.  After careful review, we affirm the trial court's determination that defendant Cordoba's conduct could reasonably

14.

be regarded as conduct from which the necessary malice could be implied, and therefore that defendant Cordoba was guilty of second degree murder.

## II.

Defendant Smith further argues that there was sufficient evidence of "an unreasonable belief in the need for self-defense" on defendant Smith's part, which justified limiting his criminal responsibility for the McIntosh killing to voluntary manslaughter.

Defendant relies upon People v. Flannel (1979) 25 Cal.3d 668, which, in the context of a discussion of jury instructions, held that an honest but unreasonable belief in the need for self-defense could, under appropriate circumstances, negate "malice aforethought." It is argued that the evidence adduced below showed that defendant Cordoba only shot the .38 caliber handgun after a .22 caliber gun had been fired at defendant Smith and himself from the vicinity of the 9th Avenue address.

There is no merit in this argument. Flannel, supra, has no application to the case before us. The evidence before us showed a foray into a hostile neighborhood by defendants, in defendant Smith's automobile, with a .38 caliber gun. Assuming that the defendants were shot at as they cruised the street, headlights off, defendant Smith's conduct in passing the 4817

residence, stopping, and backing up, negates any belief,
reasonable or not, that defendant Smith was engaging in
activity remotely connected to self-defense.

### III.

In the petition for writ of habeas corpus, defendant
Cordoba contends that his retained trial counsel was
incompetent because counsel failed to make various pretrial
motions, including a motion to sever his case from that of
defendant Rodney Tommy Smith, an appropriate discovery motion,
and a motion challenging the voluntariness of his confession to
Detective Johnson.  Respondent Attorney General contends that
the petition should be denied because petitioner has failed to
demonstrate the necessity of habeas corpus relief or the
inadequacy of appellate review.

No claim was made on appeal that trial counsel for
defendant Cordoba rendered ineffective assistance.  A defendant
has the burden of demonstrating that his trial counsel's
substandard performance deprived him of a potentially
meritorious defense (People v. Pope (1979) 23 Cal.3d 412,
424-425) or that it was reasonably probable that, in the
absence of counsel's errors or omissions, a more favorable
result would have been achieved for defendant (People v.
Fosselman (1983) 33 Cal.3d 572, 584).  Pope, explains that
"where the record shows that counsel's omissions resulted

16.

from an informed tactical choice within the range of reasonable
competence, the conviction must be affirmed." (<u>People</u> v. <u>Pope</u>,
<u>supra</u>, 23 Cal.3d 412, 425.)  Further, an appellate court
reviewing a claim of ineffective assistance of counsel
exercises "deferential scrutiny" of the record, not wishing to
second-guess trial counsel. (<u>People</u> v. <u>Ledesma</u> (1987) 43
Cal.3d 171, 216.)

There are, of course, limits to "deferential
scrutiny," but we do not reach them in the case at bench.  The
record shows that the defendants were involved in gang warfare
and that the victim was killed as the result of a "drive-by"
shooting.  The defendants were charged with murder in the first
degree, and there was some evidence that tended to support the
existence of premeditation.  The defense strategy was to waive
a jury trial and attempt to persuade the court that the killing
of the victim was a second degree murder.  Defendant Cordoba's
confession, as testified to by Detective Johnson, in fact
provided substantial evidence in support of second degree
murder rather than premeditated, first degree murder.  We
conclude that the lack of pretrial motions resulted "from an
informed tactical choice within the range of reasonable
competence".

The petition alleging ineffective assistance of

17.

counsel has been submitted to us relying on the record on appeal, without any reference to matters outside the appellate record which might cast further light on the petition's allegations.  We conclude that the petition must be denied.

DISPOSITION

The judgments of conviction are affirmed. The petition for writ of habeas corpus is denied.

NOT TO BE PUBLISHED.


HANSON (Thaxton), J.


We concur:


SPENCER, P.J.


ORTEGA, J.